Brodie et al. vs. McCabe, Collector.

BRODIE ET AT. V. McCABE, COLLECTOR.

1. TAXATION BY TOWNS AND COUNTIES: *Limits of their power under Constitution of 1874    Obligations of contract not impaired by.*

    It is now well settled that where municipal or county bonds have been is ued under authority of law, and where, at the same time, the law has directed a tax to be levied for their protection, or where there is a general law authorizing and directing a tax in all like cases applicable to such bonds, the law becomes a part of the contract. The holder has a right to look to the taxing provision as a part of his security, and to demand at the proper time that it be exercised in his favor. The measure of that right is the Constitutional limit of the power which the Legislature could grant to the municipality when the contract was made. Such contracts are protected by the Constitution of the United States, and no subsequent act of a State Legislature or Constitutional Convention can impair them.

2. TAXATION BY COUNTIES AND TOWNS: *How far power of, limited by Constitution of 1874.*

    It was the intention of the Constitutional Convention of 1874, to cut off utterly all power in counties, cities and towns, to levy taxes beyond the limits assigned in Art. XI., Sec. 4, and Art. XVI., Sec. 3 of the Constitution. But where bonds had been lawfully issued by them under a law directing a levy of taxes to pav them, such bonds are protected by the Constitution of the United States; and the constitutional limit of five mills for old indebtedness existing at the ratification of the Constitution may be exceeded, if necessary, for the payment of such debts. But there is no power after having levied a tax for such protected debt, to levy besides, a tax of five mills for other indebtedness.

Appeal from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*B. D. Turner & J. M. Moore,* for appellant.

*Newton—Howard, contra.*

EAKIN, J. :

This bill was filed on the 2d of April, 1879, in the Pulaski Chancery Court, against the Collector of the county, by Brodie and others, tax-payers, for the purpose of. restraining him from the collection of certain county and city taxes, alleged to be illegal, and from returning their property to the clerk as

·delinquent. The jurisdiction for such bills in this State, rests upon section 276 of the civil code, as amended in 1873, which provides that "the Judge of the Circuit Court may grant " injunctions and restraining orders in all cases of illegal or " unauthorized taxes and assessments by county, city or other " local tribunals, boards or officers." (See *Gantt's Digest*, Sec. 3451.)

The bill, exhibiting the order of the court, shows : That at the October term, 1868, the County Court of said county assessed the following rates of taxes upon property for county purposes, to-wit :

1. For general county purposes on each dollar of valuation ...................................... 5 mills

2. For the purpose of paying old indebtedeess, to be appropriated as follows : 3 1-2 mills to pay judgments of the United States Court on county warrants issued before the adoption of the present Constitution ; the proceeds of which tax the collector was ordered to pay, when collected, into the United States Court ; and 1 1-2 mills to the payment of interest on bonds issued, and to be issued, during the present year, in compromise of county bonds heretofore issued................................. 5 mills

3. For the purpose of paying judgments on bonds issued to the Memphis and Little Rock railroad, (act of 1859)..................................... 2 mills

4. To pay judgments on funding bonds, issued under the act of April 29, 1873, and to pay interest on new bonds issued, and to be issued, in lieu of said funding bonds, to be appropriated to the judgments, 2 mills ; and to the interest on the new bonds issued in lieu, 1 mill................................. 3 mills

Further, that on the 10th day of October, 1878, the council

Brodie et al. vs. McCabe, Collector.

of the city of Little Rock, in said county, by ordinance exhibited, levied the following taxes on each dollar of the valuation of property in the city, to-wit:

1. To pay judgments of the Pulaski Circuit Court, rendered upon indebtedness outstanding at the time of the adoption of the Constitution of 1874, in favor of certain parties whose claims are described, for the specific levy of which tax a peremptory mandamus issued from said court...................... 3¼ mills

2. For the purpose of paying balance of a certain judgment in favor of Bagley in the United States Court, for which a peremptory mandamus had issued from said court...................... 1¾ mills

4. To pay interest on certain bonds of the city, issued Sept. 1, 1875, and July 1, 1877, under the provisions of the general incorporation act of March 9, 1875 ...................................... 2 mills

5. To pay interest on indebtedness created before the Constitution of 1874, by virtue of Sec. 4, Art. 12, of said Constitution, for general purposes......... 5 mills

These levies of ten mills in the aggregate, by the county, and eleven and one-half mills by the city, for the payment of debts, over and above the levy of five mills by each, for general purposes, are alleged to be illegal, because in excess of the restrictions of Art. XVI., Sec. 9, and Art. XII., Sec. 4, of the Constitution.

Nevertheless, the city levies have been certified to the county clerk, and by him charged on the tax books.

Of the State taxes no complaint is made. Complainants allege that they have tendered them to the collector, and also ten mills upon the dollar, for county, and the same for city taxes, which amounts they claim are, in the aggregate, all which could be lawfully levied.

Brodie et al. vs. McCabe, Collector.

The answer set up the judgments of the United States Circuit Court rendered in favor of divers holders of bonds issued to the Memphis and Little Rock Railroad Company, under the provisions of the act of February 5, 1859 ; also judgments of the same court in favor of divers holders of bonds issued under the act of April 29, 1873, authorizing certain counties to fund their outstanding indebtedness ; also divers judgments of the same court in favor of other parties, upon warrants of the county, issued before the adoption of the Constitution of 1874. Upon all these judgments writs of mandamus had issued from said court, commanding the County Court to levy a tax to raise a fund for their payment.

Further, that under the provisions of an act of March 6, 1877, the County Court had issued funding bonds to take up prior bonds issued under the act of 1873, and other acts authorizing the funding of the county debts ; and that the original obligation of the county to provide, by taxation, for the payment of the bonds so taken up, attached also to those which were substituted. Whereupon he claims that the levies for these purposes were warranted by law and not in excess.

That the levy of five mills on the dollar to pay indebtedness existing at the time of the adoption of the Constitution, was authorized and required by its terms, and was judiciously distributed so as to obey the writs of mandamus of the Federal Court, and to further a scheme to reduce the county indebtedness ; and that this was done by arrangement and agreement, whereby the County Court was permitted to make a levy manifestly insufficient for the purpose.

Defendant denies that complainants have paid the State and other undisputed taxes, or have offered to do so, except on condition of getting receipts in full for all taxes charged. He also demurs to the bill.

An amended answer, regarding the city levies, shows that

the assessed value of real and personal property in the city subject to taxation in 1868, was $4,985,531.

That to pay judgments rendered in the Pulaski Circuit Court. upon old indebtedness, and upon which writs of mandamus. issued, the sum of $12,254.15 would be necessary, with interest, and that the product of the levy of three and one-quarter mills would give $16,202 ; also that the levy for the Bagley judgments was about sufficient to pay the debt.

These two levies, (amounting to five mills), were made under section 4 of article 12 of the Constitution of 1874.

That the tax of four mills was levied by virtue of the act of February 5, 1859, and in obedience to a mandamus of the United States Circuit Court, to pay a judgment of said court upon bonds issued under act of April 9, 1869, in lieu of bonds. issued to said Memphis and Little Rock railroad.

That the tax of two mills was levied to pay interest on bonds. issued September 1, 1875, and July 1, 1877, under the general incorporation act of March 9, 1875, and the tax of one-half mill was levied under authority of sections 65 and 66 of said act to provide a sinking fund for the redemption of. bonds. issued to take up all indebtedness prior to the adoption of the Constitution.

Upon hearing, the Chancellor found the first and second items of the county levy to be in strict accordance with the Constitution, and valid. That the power to levy a tax to pay the bonds issued to the Memphis and Little Rock railroad was. incorporated in the act of 1859, and became a part of the contract, which could not be impaired by the Constitution of 1874 ; and the levy of two mills to pay judgments on those bonds. was, therefore, valid. As for the levy of one mill out of the gross levy of three, it was held invalid, because the limit of taxation had been already passed, and because, also, the levy was made in part to pay interest on obligations not yet con-

tracted. As for the rest of this levy, that of two mills to pay judgments of the Federal Court, it was sustained.

Passing to the city levies, the court held : That, for reasons stated in the discussion of the county levies, they were all valid, save the fourth and fifth items. As for the two-mill tax to pay interest on city bonds of September 1, 1875, and July 1, 1877, those having been issued under the new Constitution, were held bound by its limitations, which had been already exceeded. For the same reason the levy of one-half mill was also held invalid.

Whereupon the court ordered the injunction, as to the levies held illegal, upon terms, that complainants pay all taxes legally levied.

Both parties appealed.

It is now well settled that where bonds of a county or municipality have been issued under authority of law, and where, at the same time, the law has directed a tax to be levied for their protection—or where there is a general law authorizing and directing a tax in all like cases, applicable to said bonds, the law becomes a part of the contract. The holder is entitled to look to the taxing provision as a part of his security, and has a vested right to demand, at the proper time, that it shall be exercised in his favor. The measure of that right will be the constitutional limit of the power which the Legislature could grant to the municipality when the contract was made. Such contracts are protected by the Constitution of the United States, and no subsequent act of a State Legislature or Constitutional Convention, can impair them.

The Constitution of 1836 did not limit the powers of taxation which the Legislature might grant to municipalities.

The Constitution of 1868, (Art. V., Sec. 47), prohibited the Legislature from authorizing any municipal corporation "to levy any tax on real or personal property to a greater extent

than two per centum of the assessed value of the same;" and further, with regard to cities and villages, imposes upon the Legislature the duty of restricting their powers of taxation, borrowing money, assessment, contracting debts and loaning their credit, so as to prevent the abuse of that power. It is evident that counties were meant to be included in the term "municipal corporation."

The Constitution of 1874 provided, (Art. XII., Sec. 4), that "no municipal corporation shall" .* * * "levy any tax on real or personal property to a greater extent, in one year, than five mills on the dollar of the assessed value of the same; *provided*, that to pay indebtedness existing at the time " of the adoption of this Constitution, an additional tax of not " more than five mills on the dollar, may be levied."

With regard to counties, which, in this Constitution, are treated separately, it is provided, (Art. XVI., Sec. 9), that " no county shall levy a tax to exceed one-half of one per cent " for all purposes; but may levy an additional one-half of one " per cent to pay indebtedness existing at the time of the rati- " fication of this Constitution."

Upon a careful consideration of these provisions, in connection with the history of the State, and the existing evils which the Convention of 1874 had probably in view, as resulting from the improvidence and recklessness of counties, cities and towns, in the creation of debts, we conclude that it was the intention of that body to cut off utterly all power to levy taxes beyond the limits assigned. Of course the members who framed the Constitution, knew that, under previous laws, counties and cities had been competent to create debts which would require a higher rate of taxation to discharge them; and which debts, with the means of payment, would be under the protection of the Constitution of the United States. But we cannot presume they knew that such powers had been

·exercised, or were aware that the limit they fixed would actually conflict with the superior Constitution. Where such cases arise, the State Constitution must open sufficiently to give place to the full operation of that of the United States, but need do so no further. Both must stand together as far as possible, and the restriction of the ·State Constitution continues in all respects valid, when not displaced, or pushed forward, by superior power. When that happens it is only *pro re nata*, and to the extent of the necessity. To suppose that our State Constitution intended the power to levy taxes for debts so protected, if any should exist, to be cumulative, and additional to the power allowed to be granted to levy five mills for existing debts, would do violence to the language, without any safe guide to the real intention. It must, therefore, be held, that where a tax is levied to pay ·one or more of these "protected debts," as the attorneys have called them, it so far exhausts the five mill power. If the five mills be not enough, the levy may go to the extent required by the Constitution of the United States; or if it be not all required, the remainder may be levied for payment of other ·old indebtedness. But there is no power, after having levied a tax for such protected debt, to levy besides, a tax of five mills for other indebtedness.

Several of the levies, both for the county and city, were made under peremptory writs of mandamus, issuing from the Federal Circuit Court for the Eastern District of Arkansas, and from the Pulaski Circuit Court of the State.

The use of the writ of mandamus, directed to county courts, ·or boards of supervisors of counties, to compel them to levy taxes in satisfaction of judgments at law, has been common in the Federal Court for a number of years. The decisions of the Supreme Court of the United States have sustained that power; and until the Supreme Court may change its rulings,

we concede that to the extent to which this power has been
sustained, the judges of the Federal Circuit Courts are con-
strained to continue its exercise.   We cannot yield our assent,
however, to the principle upon which this power is founded.
We look upon a mandamus as an original writ, and not as a
mere process in execution, founded upon a judgment, and con-
tinuing the jurisdiction in the court in which the judgment was
rendered.   It was, in England, a high prerogative writ issued
in the king's name, and directed to "any person, corporation,
or superior court of judicature, requiring them to *do* some par-
ticular thing therein specified."   It is, in no true sense, pro-
cess in a pending action, or in execution of a judgment.

The writ of mandamus is, in itself, a *writ*, a litigation of a
right in a court of justice, seeking a decision upon a matter
not involved in the litigation in which any judgment may have
been rendered which gives the right to the writ.   It has been
so considered by the Supreme Court of the United States.
(See Note d. to p. 297, 1st *Kent's Com.*)   When addressed
to the courts of a State commanding them to perform official
duties under powers derived alone from the State, it is most
proper that they should emanate from those superior courts of
the State which have supervising control of their own tribu-
nals; otherwise the harmony of our complicated systems of
State and Federal jurisprudence may be seriously disturbed.
If the officers of a State neglect their duty, the courts of the
State may, and have interposed to compel them, in favor of
creditors, who have obtained judgments in the Federal courts.
(*Soutter* v. *Madison City*, ) 5 Wis., p. 30 ; also *State ex rel.
Carpenter* v. *Beloit.*)

The Federal courts, however, have proceeded upon the
ground that it is neither a prerogative writ nor a new suit,
when issued to enforce a judgment of their courts, but a mere
auxilliary proceeding.

In announcing my dissent from this view, and my conviction, that the Federal courts have been mistaken, and have herein transcended their just authority and gone counter to the ideas which prevailed for three-quarters of a century in the history of Federal judicature, and that they have given a character to the writ of mandamus not warranted by common law, nor a sound construction of any statute, I must be understood as expressing my individual opinion. Upon this point in this case my associates are silent.

The jurisdiction of the Pulaski Circuit Court is proper and unquestioned, and as to the action of the United States Circuit Court, we concur in the view that comity requires it shall not be collaterally attacked, unless plainly and palpably in violation of those provisions of our State Constitution and laws, which are not in conflict with those of the United States. The authority to issue the writs of mandamus from the Federal courts, and to enforce the levy and collection of taxes to satisfy their judgments, is predicated upon the supposition that the debts upon which the judgments were rendered were protected, as to this remedy, by the Constitution of the United States. This is a quesition, the final determination of which, belongs to the Supreme Court of the United States, and upon which an appeal lies not only from the Federal Circuit Courts, but from this court also. Its supremacy in this respect must be recognized. The decisions upon the several writs of mandamus, in the Federal and State Circuit Courts, were subject to appeal directly, or indirectly, to that supreme tribunal. Until so appealed and reversed, they are not void but voidable. The members of the Pulaski County Court represented the county in those suits; and, having failed to appeal, were bound to respect the orders made in the cases. However repugnant to the views of the individual members of this court the exercise of the authority may have been, it would be

unseemly and might lead to grave consequences to forbid, in a collateral proceeding, the performance of acts which the courts have directed to be performed, and for the non-performance of which the defendants in the writs of mandamus would incur the severe penalties of contempt. This court could not protect them against the authority of the United States; and if it could, eventually, it would still consider the clash of a conflict as a thing much to be deplored, and avoided by all possible means.

A calm, earnest and anxious deliberation upon this point, with a full sense of the grave responsibilities devolving upon us, has resulted in a concurrence of opinion, to respect the mandates of the Federal and State Circuit Courts, with regard to these levies, when they have not attempted, palpably, to confer powers upon State officers not granted by the constitution and laws of the State. We have conceded that there may be cases in which the taxing power would extend beyond the express limits of the State Constitution, and comity requires us to presume, as indeed we believe, the Federal and State courts have meant to act within those powers. If they have erred, the due order of proceedings, which is essential to the harmony of State and Federal governments, and the stable administration of justice in each, requires that the errors should be corrected by appeal, or upon failure, acquiesced in with respect, and not be met with a clash of independent tribunals.

We will now proceed to consider the items, *seriatim*, in the light of these views, passing, as of course, the levy of five mills by the county and city respectively, for general purposes.

The county levy of five mills for old indebtedness was divided, Three and a half mills were levied under order of the Federal Circuit Court, rendered upon county warrants issued before the adoption of the Constitution of 1874. The orders were

not appealed, and the levy being in obedience to them, was not enjoined by the Chancellor. So far he was right.

The remnant of the five mills, (being 1 1-2) was for the purpose of paying interest on bonds issued and to be issued, during the year, in compromise of county bonds heretofore issued. The courts were authorized to issue these bonds by Act of March 6th, 1877. By Section 6, it was made the duty of the court "to levy a special tax of sufficient amount to pay "the principal and interest of said bonds as they shall become "due, *not to exceed the limit of taxation, together with all other* "*taxes* levied during that year, prescribed in the Constitution "of the State." Those who took, or might take these bonds, evidently submitted to the constitutional limit of taxation under the present Constitution. The Chancellor declined to enjoin this tax because it was part of the levy of five mills, which the county had the right to make, by express authority of the constitution, to pay old indebtedness; having failed, it seems, to notice the next item in this connection; which, being a protected debt, and levied under a mandamus, more than exhausted the remnant of the taxing power. This levy of one and a half mills should have been enjoined; the next item was properly sustained.

The fourth item was properly divided by the Chancellor, the levy of two mills sustained, and the levy of one mill enjoined. These new bonds could only be issued under the act of 1877, above mentioned.

Of the whole county tax two and a half mills must be enjoined.

Passing to the city levies: the first, of 3 1-4 mills, made upon writs of mandamus from the Pulaski Circuit Court, will not, upon the principles herein announced, be interfered with in this proceeding. If the outstanding indebtedness upon which these judgments were rendered was not under the pro-

tection of the Constitution of the United States, an appeal should have been taken to this court from the peremptory writs of mandamus. The second item, to pay the balance on the Bagley judgment, upon mandamus from the Federal court, stands, of course, upon what has been said.

The third item is to pay the judgments of the Federal Court rendered upon certain certificates of indebtedness, which were issued under authority of the general incorporation act for cities and towns, of the 9th of April, 1869. These certificates seem to have been issued to the Memphis and Little Rock railroad company in lieu of bonds which had been issued under Act of February 5, 1859. The bonds had been protected to their full extent by the Constitution of the United States, but where new certificates of indebtedness were taken in lieu thereof, with different provisions for payment, it became a novation.

Turning to the general incorporation Act of 1869, beginning with Section 3295 of *Gantt's Digest*, we find that the city was authorized, thereby, to assess and collect a tax of five mills for any indebtedness existing at the time of the levy. Section 3298 authorized the issuance of bonds for the purpose of extending the time for payment of indebtedness heretofore incurred, with provision for a tax to create a sinking fund of not more than a mill on the dollar, to be annually levied, and to be paid to the extinguishment of the bonds or funded debt, These were the certificates meant, being the same which came before this court in the case of *Vance* v. *The City of Little Rock*, 30 *Ark.*, 436. Those who took them did so upon terms, and they doubtless relied upon the security for their payment, provided by the act authorizing their issuance. Whatever their rights might have been under the original bonds, when they took these certificates they could only claim from the city a levy of five mills in the aggregate, for all general indebted-

ness, and one mill for a sinking fund for the certificates—being six mills at most. Perhaps, if the city authorities had appeared in response to the writ of mandamus, and shown all this, the Federal Court would not have made it imperative beyond one mill. However that may have been, the court issued the man-damus for four mills, and the Chancellor acted properly in refusing to disturb it.

The bonds of the city, issued September 1st, 1875 and July 1st, 1877, were, of course, subject to the constitutional pro-visions of 1874. The limits of the city's power to levy under this constitution, had been already exceeded, and this tax, together with the tax of half mill, to pay interest on indebted-ness created before the Constitution of 1874, was properly enjoined.

The decree of the Chancellor will be modified so far as he erred in not including in the injunction the amount of one and a half mills out of the general county levy for old indebted-ness.

A decree is directed here, declaring the following taxes illegal and enjoining their collection, to-wit:

### COUNTY TAXES.

That portion of the levy of five mills, for old indebt-edness, which provides for new compromise bonds.... 1½ mills

That portion of the three mill levy providing for the same........................................ 1 mill

### CITY TAXES.

Tax for interest of bonds of September 1, 1875, and July 1, 1877................................... 2 mills

Interest on old indebtedness...................... ½ mill

and it will be further ordered that the benefit of this injunc-tion be extended to all tax-payers of the county, and that in the return of delinquent taxes, these items shall not be inclu-ded by the collector; and that he, as collector, pay the costs of this appeal, to be allowed him on settlement.