### MERWIN *v*. FUSSELL.

Opinion delivered January 17, 1910.

1. TAXATION—ROAD TAX—SPECIAL ELECTION.—Under Const. 1874, Amdt. 5, providing that a county road tax may be levied and collected "if a majority of the qualified electors of such county shall have voted public road tax at the general election for State and county officers preceding such levy at each election," the road tax must be voted for by the electors at the general election preceding the levy; and the act of March 26, 1909, providing for a special election in St. Francis County to determine that question, was invalid, and the tax levied in pursuance thereof was illegal. (Page 339.)

2. SAME—INJUNCTION AGAINST ILLEGAL TAX.—Under Const. 1874, art. 16, § 13, providing that any citizen of any county may sue to protect the inhabitants thereof against illegal exactions, and Kirby's Digest, § 3966, providing that injunctions may be granted in cases of illegal or unauthorized taxes, a citizen and taxpayer is entitled to an injunction against the collection of an illegal or unauthorized tax. (Page 341.)

Appeal from St. Francis Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Hal L. Norwood,* Attorney General, for appellant.

The act of 1909 does not require "a majority of the qualified electors of the county," as called for in the constitutional provision (Amendment No. 5, Const., and § § 7324 *et seq.* Kirby's Dig.), nor does the order of court state that the proposition received such a majority; but this does not raise a presumption that such a majority did not vote in favor of the road tax. The act is also in apparent conflict with the constitutional requirement that the road tax be voted on "at the general election for State and county officers," in that it provides for a special election. The object of the constitutional provision, however, was to permit the levying of a road tax whenever a majority of the qualified electors of the county should vote in favor of it, and we can see no reasonable objection to the holding of an election at some other time than that mentioned in the Constitution. The act should be upheld if possible. 69 Ark. 376; 77 *Id.* 250. The chancery court was without jurisdiction. Appellee's remedy is plainly provided in § 6896, Kirby' Dig. 7 Ark. 520; 13 *Id.* 630; 26 *Id.* 649; 26 *Id.* 680; 27 *Id.* 97; 27 *Id.* 157; 30 *Id.* 109; 48 *Id.* 331.

*Walter Gorman,* for appellees.

Plaintiff below had a right to sue in behalf of all property owners in the county subject to taxation. Sec. 13, art 16, Const. The chancery court had jurisdiction. Kirby's Dig. § 3966; 33 Ark. 441; 34 *Id.* 603; 39 *Id.* 412; 46 *Id.* 471. The act is in contravention of the constitutional provision, and is void.

FRAUENTHAL, J.   The plaintiff below, James Fussell, on behalf of himself and all the owners of property in St. Francis County, instituted this suit in the chancery court of that county against T. C. Merwin, clerk of the county court, and W. E. Williams, sheriff and ex-officio collector of said county, seeking to enjoin the extension on the tax books and the collection of a certain tax, called the road tax, of three mills, levied on the property in said county for the year of 1909. In his complaint he alleged that he was the owner of real and personal property in said county subject to taxation, and that he brought the suit in behalf of himself and all owners of property subject to taxation in said county. That the qualified electors of St. Francis County failed to vote for a public road tax in said county at the general election for State and county officers next preceding the first Monday in

October, 1909. "That the Legislature of 1909 passed an act, which was approved March 26, 1909, and entitled 'An act to provide for special elections in Mississippi and St. Francis counties for levying a tax for road purposes,' which said act, after naming the third Monday in May, 1909, as the time for holding said special election, and prescribing the manner in which said election should be held, proceeds as follows:

" 'Sec. 5. That, if a majority of the votes cast in said election shall be for road tax, that the quorum court for said counties, at their regular annual meeting, in the month of October, 1909, shall fix the rate as by law provided, and shall levy same on and against all real and personal property in the counties made subject to taxation by law for the year 1910, and the clerks of said counties shall extend the taxes thus levied by said quorum courts against all said property on the tax books of said counties for the year 1910, and the sheriffs and collectors of said counties shall collect the taxes so levied and extended, the same as any other taxes levied and collected for said counties.'

"That the quorum court of St. Francis County, at its regular annual meeting held in said county on the first Monday in October (October 4), 1909, acting under the supposed authority conferred by said special act of the Legislature made and caused to be made, entered of record an order purporting to levy a road and bridge fund tax of three mills on each dollar of real and personal property in St. Francis County, as shown by the assessment of said property for the year 1909. * * * That the defendant, · T. C. Merwin, clerk as aforesaid, is now engaged in making up the tax books for the year 1909, for said county of St. Francis, and extending thereon the said road and bridge fund tax of three mills on each dollar, of the value of all real and personal property in said county, as shown by the assessment rolls for 1909. That the defendant, W. E. Williams, sheriff and ex-officio collector of taxes for said county as aforesaid, if not previously enjoined by this court, will, on the first Monday in January, 1910, proceed to collect from all the owners of property in said county the total amount of taxes extended against said property, including the said tax of three mills for road and bridge fund; and if the plaintiff and other owners of said property should refuse to pay said taxes as extended against said

property the said collector will sell the same for the payment thereof, thereby clouding the title to said property and giving rise to a multiplicity of law suits."

The defendants filed a demurrer to the complaint and then an answer. In their answer they admitted the allegations of the complaint. They alleged that at a special election held in May, 1909, in said county 800 votes were cast for road tax and 44 votes against road tax, and that the authority under which said road tax was levied by the quorum court of said county was competent and lawful. They further alleged that there was no equity in the complaint, and that plaintiff had no right to maintain the action. The chancery court sustained a demurrer to this answer; and, the defendants having refused to plead further, a decree was entered enjoining said sheriff and ex-officio collector from collecting the said tax of three mills for road and bridge fund so levied on the property in St. Francis County for the year of 1909. From that decree the defendants prosecute this appeal.

The only authority by which the county court of St. Francis County could levy a road tax is derived from the Constitution of the State. The Constitution provides: "The county courts of the State in their respective counties, together with a majority of the justices of the peace of such county, in addition to the amount of county tax allowed to be levied, shall have the power to levy not exceeding three mills on the dollar on all taxable property of their respective counties, which shall be known as the county road tax, and, when collected, shall be used in the respective counties for the purpose of making and repairing public roads and bridges of the respective counties, and for no other purpose, and shall be collected in United States currency or county warrants legally drawn on such road tax fund if a majority of the qualified electors of such county shall have voted public road tax at the general election for State and county officers preceding such levy at each election." (Amendment No. 5, Const. 1874).

It is axiomatic, under our form of government, that the Constitution is the paramount law to which all other laws must yield, and that it is obligatory on all departments and the citizens. It is the measure of the rights and powers of the legislative department; and an act passed by that body which contravenes any express mandatory provision of the Constitution is invalid. It

is provided by the Constitution that the county court shall have the power to levy a road tax "if a majority of the qualified electors of such county shall have voted public road tax at the general election for State and county officers preceding such levy at each election." By this provision the Constitution has fixed the conditions which must be complied with before a valid levy of this road tax can be made. It must be first voted by the electors, and the time of holding that election is fixed by the Constitution. It is said by Mr. McCrary in his work on Elections that "it must be conceded by all that time and place are the substance of every election," and that "it is, of course, essential to the validity of an election that it be held at the time and in the place provided by law." McCrary on Elections, § § 176, 153.

The authority to hold an election at one time will not warrant an election at another time, and an election held at a time not fixed by the law itself will be void. In his work on Constitutional Limitations Mr. Cooley says: "Where the time and place of an election are prescribed by law, every voter has a right to take notice of the law and to deposit his ballot at the time and place appointed." Cooley on Constitutional Limitations, 909. ·

The time of holding an election is therefore one of its essential ingredients, and the provision designating such time cannot be deemed to be directory merely. It is a mandatory requirement, and is exclusive. In 10 Am. & Eng. Ency. Law, 681, it is said: "If the Constitution of a State fixes the time for holding an election, the Legislature cannot without constitutional authority make any change in the time." In Paine on Elections, § 306, it is said that the designation in a State Constitution of the "annual town meeting" as the time for the election of justices of the peace is equivalent to a prohibition against electing them at any other time.

In the case of *State* v. *Johnson,* 26 Ark. 281, it is said: "Where the Constitution designates in express and explicit terms the precise time when a fundamental act shall be done and is utterly silent as to the performance at any other time, it cannot be done at any other time." Few of the provisions in a State Constitution should be considered directory; they are the expressions of the highest will of the people, and should be followed. *State* v. *Askew,* 48 Ark. 82; 8 Cyc. 762.

The Constitution has prescribed that the election at which the electors shall vote on the question of a road tax shall be held at the general election for State and county officers. It may have been thought that at an election held at that time a larger vote would be cast and a better and more extended expression of the electors would be obtained. The case at bar is an illustration of the fact that ordinarily at the general election held for State and county officers a larger number of votes is cast than at a special election. In this case there were cast at the general election held for State and county officers in September, 1908, more than 2,000 votes, while at the special election in May, 1909, only 844 votes were cast. But, whatever the reason may have been, the Constitution has in express terms designated the time of holding this election. This provision of the Constitution is therefore mandatory, and must be followed. The act of the General Assembly approved March 26, 1909, which authorized a special election to be held in May, 1909, in St. Francis County for the purpose of voting upon the question of "road tax" (Acts 1909, p. 246), contravened this provision of the Constitution, and is therefore invalid. The majority of the electors of St. Francis County did not vote a public road tax at the general election for State and county officers preceding the levy of that tax made by the county court of that county in October, 1909. That tax, so levied by the county court, was unauthorized, and it was therefore illegal and void. *Worthen* v. *Badgett*, 32 Ark. 496; *Cairo & Fulton R. Co.* v. *Parks*, 32 Ark. 131; *Hodgkin* v. *Fry*, 33 Ark. 716; *Cole* v. *Blackwell*, 38 Ark. 271.

It is urged by counsel for defendants that the plaintiff was not entitled to the equitable remedy of injunction, because by virtue of section 6896 of Kirby's Digest he had a right to appear before the county court and object to the levy of any specific tax for illegality, and through that procedure he had a full and adequate remedy. But by section 13 of article 16 of the Constitution of 1874 it is provided: "Any citizen of any county, city or town may institute suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." And by section 3966 of Kirby's Digest it is provided that injunctions and restraining orders may be granted in all cases of illegal or unauthorized taxes and assessments by

county, city or other local tribunals or officers. And under these provisions of the Constitution and the statute a citizen and taxpayer has the right to obtain from a court of equity an injunction against the collection of an illegal or unauthorized tax. *Vaughan* v. *Bowie,* 30 Ark. 278; *Brodie* v. *McCabe,* 33 Ark. 690; *Cole* v. *Blackwell,* 38 Ark. 271; *St. Louis Southwestern Ry. Co.* v. *Kavanaugh,* 78 Ark. 468; *Little Rock* v. *Barton,* 33 Ark. 441; *Dreyfus* v. *Boone,* 88 Ark. 353.

The decree of the St. Francis Chancery Court is affirmed.