THOMPSON v. STATE OF ARKANSAS,
ex rel. ERWIN, Pros. Atty., et al.

No. 11699.

Circuit Court of Appeals, Eighth Circuit.

Sept. 5, 1940.

Rehearing Denied Oct. 1, 1940.

Thomas B. Pryor, of Fort Smith, Ark. (James M. Chaney, of St. Louis, Mo., and Harry L. Ponder, of Walnut Ridge, Ark., on the brief), for appellant.

Ras Priest and C. M. Erwin, Jr., both of Newport, Ark., for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

352

BELL, District Judge.

The State of Arkansas on relation of the proper officials of Jackson County presented a claim in proceedings under the Bankruptcy Act for the reorganization of the Missouri Pacific Railroad Company, debtor, for taxes levied on the property of the railroad company in said county for the years 1937 and 1938. The matter was heard by a special master who found that the taxes were valid and recommended that the sum with interest be allowed as a preferred claim. The debtor filed exceptions to the report of the master. The court overruled the exceptions and approved the report, whereupon this appeal was taken.

This controversy involves the validity of the election of November 3, 1936, in Jackson County, Arkansas, at which the question of authorizing the tax was submitted to the electors.

Amendment number three to the Constitution of the State of Arkansas[1] authorizes the levy of a road tax not exceeding three mills in any county of the state if a majority of the qualified electors of such county vote in favor of such tax at the general election for State and county officers preceding such levy.

A statute[2] of Arkansas requires that there be placed on the ballot submitting the question of the levy of the tax to the voters: "For road tax" and "Against road tax."

A statute[3] provides that the sheriff shall give notice by proclamation of the time and place of holding elections and the officers to be elected; and another statute[4] provides the manner of publication of such notice. (There is a controversy as to the applicability of these two statutes, but as we view the case, a decision on the point is unnecessary.)

A statute[5] provides that the Commissioners of each county shall make publication of the nominations, amendments to the Constitution, and other questions submitted to the electors, and the manner of publication.

It appears that the county judge of said county on the day before the election of November 3, 1936, discovered that the ballot did not bear the printed requirements of the statute showing the submission of the tax levy to the voters, whereupon he conferred with the County Commissioners and had stickers printed bearing the words "For road tax" and "Against road tax." The stickers were delivered to the

[1] Amendment No. 3 to the Constitution: "The county courts of the State in their respective counties together with a majority of the justices of the peace of such county, in addition to the amount of county tax allowed to be levied, shall have the power to levy not exceeding three mills on the dollar on all taxable property of their respective counties, which shall be known as the county road tax, and when collected shall be used in the respective counties for the purpose of making and repairing public roads and bridges of the respective counties, and for no other purpose, and shall be collected in United States currency or county warrants legally drawn on' such road tax fund if a majority of the qualified electors of such county shall have voted public road tax at the general election for State and county officers preceding such levy at such election."

[2] Section 4756, Pope's Digest, Statutes of Arkansas, 1937: "It is the duty of the election commissioners in the several counties of the State of Arkansas to place on the ticket to be voted at the election held for the election of county officers, 'For road tax' and 'Against road tax,' and said commissioners shall canvass said vote and declare the same as they do other returns."

[3] Section 4672, Pope's Digest, Statutes of Arkansas: "It shall be the duty of the sheriff of each county, at least twenty days before each general election and ten days before the holding of each special election, to give public notice, by proclamation throughout the county, of the time and several places of holding such elections in his county and the officers to be elected at such time."

[4] Section 4673, Pope's Digest, Statutes of Arkansas: "A copy of such proclamation shall be set up at each of the places fixed for holding such election and two or more of the most public places in each township, and publish the same in a newspaper, if one be published in the county."

[5] Section 4675, Pope's Digest, Statutes of Arkansas: "The commissioners of each county shall make publication of all nominations filed with them, and all nominations certified to them by the Secretary of State, and also all proposed amendments to the Constitution, and other questions certified to them by the Secretary of State, or required by law to be submitted to the electors at any election, by posting a list thereof at the door of the courthouse at least ten days before the day of election."

election judges and clerks at the various voting precincts throughout the county for use of the voters on the following day.

It is undisputed that the proclamation. of the sheriff did not contain anything pertaining to the road tax question and that the Commissioners did not make publication of the submission of the question at the election.

The election returns showed that 2,514 votes were cast in Jackson County, that 2,041 were cast on the question of authorizing the road tax, that 1,819 votes were cast for and 222 votes were cast against the road tax.

The assessment was duly made and the taxes levied but unless the election was valid the levy was not authorized, consequently the validity of the tax depends on the validity of the election.

Appellant contends that the election was invalid because: (1) the Commissioners failed to place on the ballot "For road tax" and "Against road tax;" (2) the sheriff failed to make and publish a proclamation giving notice of the road tax issue; and (3) the County Commissioners failed to publish notice of the submission of the tax question to the electors.

The appellee contends that the provisions of the statute were directory only, that the people were informed of the tax issue and freely and intelligently expressed their will thereon, and therefore, that the election was valid.

The county court had power to levy the tax "if a majority of the qualified electors of such county shall have voted public road tax at the general election for State and county officers preceding such levy at such election." Amendment No. 3 to the Constitution of Arkansas; Merwin v. Fussell, 93 Ark. 336, 124 S.W. 1021.

It is not essential that a majority of those voting at the election shall cast their vote for the tax, but if a majority of those who vote on the question cast their votes in the affirmative the levy is authorized. Watts v. Bryan, 153 Ark. 313, 240 S.W. 405.

The appellant and the appellee both point with much assurance to the opinion of the Supreme Court of Arkansas in the Missouri Pacific Railroad Company v. McCracken, 196 Ark. 311, 117 S.W.2d 345, 346. That was an action to enjoin collection of a road tax on the ground that the election was invalid. Notice by proclamation of the

sheriff or the County Commissioners had not been given. The ballot did not contain "For road tax" and "Against road tax" or any indication that the question was submitted to the voters at the election. Out of 1,500 votes only two were cast on the question and the court held that the election did not meet the requirements of the Constitution and law of Arkansas.

The appellant evidently cited the McCracken case because the court said that it was the duty of the sheriff to notify the voters by proclamation and of the Commissioners to provide a ballot showing the submission of the road tax question and that the requirement of providing a place on the ballot for the question was "an essential element of the election." In this connection the Court said: "If the Commissioners provide no place on the ballot for the electors to express their preference upon the subject of road tax, an elector may not vote upon the subject by marking his ballot so as to show his vote and then insist that his vote be counted and reported and the result thereof be declared as determining and settling the proposition upon which he alone voted. In such case, there is no election. That is what happened in the instant case. Only two electors voted upon the subject of road tax, their votes being cast for same. These 2 votes cannot be accepted as meeting the requirements of the Constitution to the effect that a majority of the qualified electors of the county must vote the tax before the County Court has authority to levy same. The electors failed to vote upon the subject and there was, therefore, no election."

The appellee obviously cited the McCracken case because the Court said: "* * * nor do we mean to hold that if the vote had been such in the instant case as to show that the failure of the Election Commissioners did not obstruct the free and intelligent casting of votes on the question of road tax, that there would have been no election on the subject of road tax. For, if the voters had, by their votes, expressed their preference, regardless of the failure of the Commissioners to furnish the ballots as required by law, then such failure would have been of no importance." The basis of the decision is found in the last sentence of this quotation.

In the McCracken case the court expressly overruled Wallace v. Kansas City Southern Railway Company, 169 Ark. 905, 279 S.W. 1, 3, which was an action to re-

strain the collection of a road tax on the ground that the election was invalid for the reasons that the required notice of submission of the question to the voters was not given and the ballots did not have printed on them the words "For road tax" and "Against road tax." Only a few electors voted on the question but the court sustained the tax. The court said that the statute was mandatory in the sense that it makes it the duty of the election commissioners to furnish ballots that meet the requirements of the statute but not in the sense that the right to vote on the question will be lost because the commissioners failed to perform their duty. In this connection, the Court said: "The Constitution gave the qualified electors the right to vote on the question at a time and place fixed by law, and this right should not be taken away because of any failure or omission on the part of the election commissioners in discharging their duties in the preparation of the ballots."

In Starrett v. Andrews, 195 Ark. 1078, 115 S.W.2d 549, 551, the sheriff's proclamation was not published as provided by statute; the commissioners did not make publication of the question which was "for or against County Road Commission"; the ballot containing nothing pertaining to such question; and less than one-eighth of the electors voted on the issue. Furthermore, the matter was presented at a special election held to elect a United States Senator. The Court held there was no election, but said:

"If the number of votes upon the matter in issue was such as to indicate that electors generally had notice of the matter involved, we would hold the statutory notices relatively unimportant. * * * On the other hand, had proper notices as required by law been given we would have been impelled to hold there had been an election. There is nothing in this case from which notice may reasonably be presumed.

"The conclusion must be that, since less than one-eighth of the electors voted upon this question, it was not known to be a matter submitted for decision by ballot because not properly advertised."

In Wheat v. Smith, 50 Ark. 266, 7 S.W. 161, 165, involving the validity of a special election to fill the office of Circuit Clerk in which the statutory notice had not been given, the Court said: "When a special election to fill a vacancy is ordered, there is no presumption that the voters know the date fixed by the writ of election, and they must be informed of it. But the established rule is that the particular form and manner pointed out by the statute for giving notice is not essential. Actual notice to the great body of electors is sufficient. The question in such cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election."

In Beene v. Hutto, 192 Ark. 848, 96 S.W. 2d 485, the Clerk had certified that the petition for a vote on the initiative act was sufficient but the election commissioners arbitrarily refused to include the issue on the ballot, whereupon the sponsors of the measure gave it publicity and provided rubber stamps for the use of the voters. The returns showed that 1,187 out of 2,101 votes were cast in the affirmative and none in the negative. The court said that the failure of the election commissioners to place on the ballot questions submitted when they should have done so would not render the election invalid, and that an affirmative decision by the voters would adopt the question, although it had been omitted from the ballot.

In Biggs v. Stout, 168 Ark. 809, 813, 271 S.W. 458, 459, the court uses significant language, as follows: "In support of this contention, counsel for appellant cite cases holding that, where the Constitution or a valid statute prescribes the time, place, and manner for the election of a particular officer, or for the determination of a specific question by the qualified voters, and a statute requires certain officers to give notice of the election, such statutory requirement is merely directory, and neither irregularity in the notice nor an absolute failure to give the notice will invalidate the election. This rule has been given recognition and has been approved and adopted by this court; * * *."

In Jones v. State, 153 Ind. 440, 55 N.E. 229, 233, the Court said: "All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly

declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void." This quotation was cited with approval in the McCracken case, in Wallace v. Kansas City Southern Railway Company, supra; and in Hogins v. Bullock, 92 Ark. 67, 121 S.W. 1064, 19 Ann.Cas. 822.

The Arkansas court in Whitaker v. Mitchell, 179 Ark. 993, 18 S.W.2d 1026, 1027, referred to the language of the Supreme Court of Iowa in Dishon v. Smith, 10 Iowa 212, as follows: "The voice of the people is not to be rejected for a defect or want of notice, if they have in truth been called upon and have spoken."

■ From the Arkansas decisions we conclude that the purpose of the statutory requirements is to apprise the electors of the issues that will confront them on election day so that they may have an opportunity freely and intelligently to express their will; that if there is compliance with the statutes, the election is valid irrespective of the number of votes cast; that, even if there is not compliance with the statutes, the election is valid, provided there is a sufficient number of votes cast to show that the electors were sufficiently informed to cast their votes freely and intelligently; that the people may not be deprived of their right of suffrage because of the failure of officials to perform their ministerial duties; and that the statutes here involved are directory and not mandatory if the proceeding is to attack the result of an election that has been held.

■ The factual difference in the McCracken case and the controversy before us is decisive. In the former, the statutory notice had not been given by the sheriff or the election commissioners, but equally important, there was nothing on the ballot or before the voters to indicate the submission of the tax issue; while in the latter, the notice likewise had not been given but printed stickers were provided for the convenience of the voters and obviously these were presented to them by the election officials along with the printed ballots. In the former, two votes out of 1,500 were cast on the question; while in the latter 2,041 voters out of 2,514 expressed their will; or in other words, about four-fifths of the electors voted on the issue and approximately seven-eighths of those voted for the tax. In the former, the result is conclusive proof that the electors did not have notice of the submission of the question; while in the latter, it is just as conclusive that they were fully aware of the issue before them on election day. In the former, there was no election as the court said; while in the latter, the will of the voters presumably was freely and intelligently registered. In the former, the election was held invalid, but the reasons assigned and the language of the court lead us to a contrary conclusion in the latter.

Therefore, the decision of the District Court is affirmed.