JONES *v.* CROUCH.

5-2068                                    332 S. W. 2d 238

Opinion delivered February 22, 1960.

*Lyman L. Mikel,* for appellant.

*Gean, Gean & Gean,* for appellee.

CARLETON HARRIS, Chief Justice. Suit was instituted in the Chancery Court, Fort Smith District, Sebastian County, Arkansas, to enjoin the collection of taxes on the personal property of appellees. Appellees, in April, 1958, assessed their personal property at an assessed value of $15,000. The assessor of Sebastian County made his own assessment in the amount of $49,575. After receiving notice of the raise in assessment, appel-

lees filed a petition with the Board of Equalization to reduce the assessment. According to appellee, Carl Corley, one of the partners of Crouch Equipment Company, he called the Board twice, but was advised that personal property petitions were not being heard at that time, and that he would be subsequently notified.[1] Corley further testified that he again called on December 10th, and talked with Jess Hall, a member of the Equalization Board, who advised Corley that the Board was then in the process of making up its final report. Appellee stated that Hall asked him if he could come down on that day for a hearing, and he (Corley) advised that he was due to catch a train that afternoon for an appointment out of the city, and also that he would need a little time to get his information and witnesses together. Hall then told him to hold the phone until he could talk with other members of the Board. Upon resuming his conversation with Corley, Hall stated that hearings had been completed, and he would "have to wait until next year to get a hearing." This testimony was not too far different from that of Mr. Hall, who testified that Corley told him he wanted the hearing that day. The witness testified that R. B. Hudson, chairman of the Board, stated that the petition could not be heard that day, but could be heard the next day. According to Hall, Corley replied that he was leaving town at noon, and could not be present. After further talking with Hudson, Hall told Corley that if he could not be present the next day, the matter would have to wait until next year. On January 6, 1959, appellees instituted suit in the Chancery Court, alleging that the assessment was illegal and excessive; that they were never given a hearing by the Equalization Board, and accordingly had been deprived of their constitutional rights, and asked that the collector be restrained and enjoined from collecting or attempting to collect any tax based on said appraisement. On hearing, the court found "that all the material allegations of Plaintiffs' Complaint and Amendment to Complaint are true"; that the assessment for the year 1958 was

---

[1] Corley also sought a reduction in his real estate assessment, which was heard in September.

illegal, unconstitutional and void, and enjoined the county clerk, assessor, and collector, from collecting or attempting to collect any taxes on the personal property belonging to appellees on any valuation in excess of the valuation of $15,000 for the year 1958. From such decree comes this appeal.

Before specifically discussing the issues in this case, we think it well to set out the law relating to assessments, which has been, to some degree, changed by recent legislative sessions. The statute in effect at the time of this litigation (§ 84-416, Ark. Stats. (1947) Anno.) provided that the assessor should appraise and assess all personal property between the first Monday in January and third Monday in August.[2] § 84-437 (Ark. Stats. (1947) Anno.) provides that the assessor shall

"* * * in each instance where he raises the valuation of any property which has been listed with him as by law required, shall deliver to the property owner or his agent a duplicate copy of such adjusted assessment list, or he shall notify such property owner or his agent by first class mail, which notice shall state separately the total valuation of real and personal property as listed by the property owner and as fixed by the assessor, and shall advise that such owner may, by petition or letter, apply to the equalization board for the adjustment of the assessment as fixed by the Assessor, provided all applications shall be made to said board on or before the third Monday in August."

Section 84-706 provides that the regular session of the Board shall be held beginning the third Monday in August and up to the third Monday in September.[3] The General Assembly of 1951, in extraordinary session, through Act 9 (§ 84-717 through § 84-719, 1957 Supplement), provided that the Equalization Board of any county, on petition of the county judge or on its own motion, could, at any time after adjournment of its regular meeting, and before

---

[2] Act 246 of the General Assembly of 1959 changed this statute to read "between the first Monday in January and the first day of August."

[3] Act 246 or 1959 changed the time to the first day of August through the first day of September.

the first Monday in October next following such adjournment, convene in special session

"* * * for the purpose (1) of completing its work of equalization of property assessments or (2) for the purpose of reviewing or extending its work of equalization of property assessments; and, for that purpose, said Board shall be vested and charged with all the powers and duties with which such Board is vested and charged when meeting in regular session and, in addition, said Board shall be empowered to employ qualified appraisers, abstractors or other persons needed, to appraise properties which the board may need in the discharge of its duties.

The petition to said Equalization Board shall specify the date on which the Board shall convene and such Board may thereafter exercise its functions but not later than the third Monday in November next following."

Section 84-708 (1957 Supplement) provides that any property owner may petition the Equalization Board for an adjustment, and further provides that if he feels aggrieved at the action of the Equalization Board, he may appeal to the county court "provided, no appeal to the county court shall be taken except by those who have first exhausted their remedy before the Equalization Board, excepting however, all cases where the petitioner shall have had no opportunity to appear before said Board." The section further provides that all appeals from regular sessions of the Board shall be filed before the second Monday in October, and shall be heard by the county court before the first Monday in November. Section 84-718 (1957 Supplement), relating to appeals from special sessions, provides:

"Appeals from the action of the Board when in special session shall be to the County Court in the manner as now provided by law, except that any such appeal shall be filed within ten (10) days from date of notice of action by said Board, and shall be heard and order made by the County Court not later than forty-five (45) days prior to the date on which the tax books for the

year are required to be delivered to the County Collector."[4]

We disagree with the Court's finding that the assessment made by the assessor was illegal, unconstitutional, and void. While this assessment was based upon an appraisal submitted by E. T. Wilkins and Associates,[5] the assessor had full authority to assess the property at whatever figure, based on his information or investigation, he deemed to be right and proper. In fact, that is the very duty of the assessor. Here, an assessment was made, and appellees notified, following which they filed their petition with the county Equalization Board. According to the evidence, they were heard as far as a reduction in the real estate assessment was concerned, but were told that hearings, relative to a reduction of personal property assessments, were not being conducted at that time. According to Corley, he contacted the Board twice before the December 10th date, but no hearing was set. On December 10th, he again called, and the conversation took place as heretofore related.

Let it first be pointed out that the Board actually had no authority on that date to reduce—or for that matter, raise—anybody's assessment. The statute very definitely provides that the Board cannot exercise such a function after the third Monday in November. Accordingly, any equalization action taken at that time would have been without force and effect if it had been questioned. Appellees seem to be of the opinion, that having filed their petition with the Board, it forthwith became mandatory that a hearing be granted. Of course, Corley admitted that he was told he could appear before the Board that day (December 10th), but we hardly think

---

[4] The clerk is required to deliver these books to the collector by the third Monday in February. While not involved in this appeal in any way, § 84-721 authorizes the Equalization Board to meet at any time for the purpose of planning its work of equalization, and empowers the Board to employ qualified appraisers, abstractors, or other persons needed for appraisal work. This section relates only to the planning of the work.

[5] E. T. Wilkins and Associates, in pursuance of Act 351 of 1949 as amended in 1957, were employed by the Fort Smith District of Sebastian County, Arkansas, to appraise the property of appellees and other taxpayers in the district and county.

that would have been sufficient time for appellees to get ready to present their case. However, we do not agree that a hearing was mandatory. A large enough number of petitions could be filed that it would be a physical impossibility to hear all in the length of time allotted. The statute itself makes clear that a hearing is not mandatory, for it provides that an applicant must exhaust his remedy before the Equalization Board except in those cases "where the petitioner shall have had no opportunity to appear before said Board." Of course, it is contemplated that a petitioner will have a hearing before the Board; otherwise, there would have been no occasion to set up such a Board, but the failure of the Board to hold such a hearing certainly does not invalidate the assessment already made, nor does the failure to obtain a hearing result in taking the petitioner's property without due process of law, for a remedy is still provided. That remedy is an appeal to the county court, and such appeal must be taken within ten days from the date petitioner receives notice from the Board. Appellees argue that they received no notice of any action by the Board; further, that no action whatsoever was taken relative to the petition, and there was accordingly nothing to appeal from. It is true that no written notice was sent, but Mr. Corley certainly was notified that the petition was not going to be heard. Whether the statement that Corley would "have to wait until next year to get a hearing" be construed as turning down the petition for reduction, or be construed to the effect that the Board was taking no action at all, is of no concern. The fact remains that appellees *knew they were not obtaining any relief.* With this certain knowledge, it only remained for them to appeal to the county court. In other words, if it be considered that appellees' petition had been denied by the Equalization Board, then their remedy had been exhausted before such Board. On the other hand, if they had no opportunity to appear before the Board, the right of appeal to the county court still remained. The Board's action—or inaction—did not preclude appellees from pursuing their statutory remedy for a hearing. Actually, though the Board had no authority in December to grant

any relief, if an appeal had been taken, the county court could, had it so desired, have reduced the assessment. In fact, testimony reflects that the county court heard two cases where petitioners had not been previously heard by the Equalization Board.

We certainly would readily say that, if at all possible, the Board should hear a taxpayers' petition. We are likewise of the opinion that in the interest of efficiency, and to avoid misunderstanding, a better practice would call for Boards to send written notices to all petitioners advising definite hearing dates, or informing that his or her petition could not be heard. We agree that appellees were diligent in trying to obtain a hearing before the Board. Having said this, the fact remains, however, that the statutory remedy for an aggrieved property owner was not followed. To affirm this decree would simply be to disregard the plain statutory requirements.

In summary, we find that the assessment made by the assessor of appellees' personal property for the year 1958 was not illegal, or unconstitutional; there is no absolute right to a hearing before the Equalization Board, and the failure to obtain such hearing did not amount to depriving appellees of their property without due process of law. Finally, the court was in error in holding that appellees had possessed no adequate remedy at law, for the right of appeal accrued on December 10th. It follows that the injunction was erroneously granted.

Reversed.