John P. GILL; W.W. Elrod, II; Joseph D. Calhoun, III; and Gill Law Firm n/k/a Gill and Elrod, and Arkansas Partnership
*v.* ARKANSAS EMPLOYMENT SECURITY DIVISION of the Arkansas Department of Labor, et al.

91-15                                          812 S.W.2d 114

Supreme Court of Arkansas
Opinion delivered June 24, 1991

*Gill and Elrod*, by: *Glenn E. Kelly*, for appellant.

*Ronald A. Calkins*, for appellee.

ROBERT L. BROWN, Justice. The appellants, including John P. Gill, filed a complaint wherein they contended that they were entitled to participate in the experience rate of Gill's predecessor law firm for purposes of determining their unemployment compensation taxes. After answering, the appellees, which include the Arkansas Employment Security Division (AESD), moved for summary judgment, and the chancery court granted that motion. The appellants appeal from that order.

The facts reveal numerous communications involving the three entities: AESD, Gill's predecessor law firm, and the present Gill law firm. On April 1, 1986, Gill officially terminated his relationship with his old firm. Shortly thereafter, he was advised by AESD that the agency had established 3.4 percent (the amount fixed by statute for new employers generally) as the experience rate applicable to his new firm. Ark. Code Ann. §§ 11-10-702 (1987) and 11-10-706 (Supp. 1989). At John Gill's predecessor law firm, the unemployment compensation rate was 1.3 percent due to its favorable past experience. Gill began a campaign to convince AESD that his new firm should have part of the favorable experience associated with his old law firm transferred to it. From April 1, 1986, to June 1987, Gill negotiated with his predecessor law firm over the percentage of business

acquired and the portion of the experience to be transferred.

On May 29, 1986, Gill sent a Report to Determine Liability form to AESD, which showed that he had acquired 40 percent of the predecessor business. He was subsequently advised by letter that his new firm qualified as an employer for unemployment compensation purposes and that if he disagreed with the decision, he could ask for a hearing. Gill requested a hearing the next day, June 20, 1986. In August 1986, AESD sent a second letter advising him of his new employer status and right to a hearing. He again requested a hearing on his liability status on September 2, 1986.

The communications between Gill and AESD came to a head on September 15, 1986, when William D. Gaddy, administrator of AESD, wrote Gill a letter explaining his status:

> This is to confirm the telephone conversation you had with one of our staff attorneys, George Wise, Jr., on September 10, 1986, wherein it was agreed that the administrative hearing scheduled for your law firm on October 29, 1986 would be cancelled.

> As Mr. Wise explained, we thought your request for a hearing was to contest the liability of your law firm for unemployment contributions. It appears, however, you are seeking a transfer of a portion of the experience rate of your former law firm. This is a procedure for which no hearing is allowed by law or actually needed. To request such a transfer you simply need to send me a petition (it may be in letter form) signed by all interested parties (your former law partners) setting out the percentage of experience that should be transferred. The relevant law is found at *Ark. Stats. Ann.* §81-1108(c)(2).

> Mr. Wise tells me that you have agreed to submit your petition by October 29, 1986. If you are unable to submit such a petition, we will have no choice under the law but to deny the transfer request.

Neither Gill nor his former law partners filed a petition by October 29, 1986. It should be noted in this regard that an AESD supervisor wrote Gill a letter dated August 15, 1986, in which he stated that a spokesman for Gill's predecessor law firm had told

the supervisor on three occasions that the firm would not agree to any transfer of the experience to Gill's new firm. The next contact between AESD and Gill occurred in March 1987, when AESD advised Gill that his experience rate would be 3.4 percent. In reaction to this, Gill wrote his predecessor law firm on March 30, 1987, and requested that the firm execute an authorization transferring 35 percent of the firm's experience in accordance with "our settlement agreement."

Rather than execute the authorization form, Mike Rainwater, on behalf of the predecessor firm, wrote AESD administrator Gaddy on April 2, 1987, advising him that the firm and Gill had reached an agreement for the assignment of 35 percent of the firm's experience to Gill. Rainwater stated that the agreement further provided that if the assignment cost the firm additional expense, Gill would pay the amount to the firm. Rainwater then asked Gaddy to provide him with the amount of any additional cost to the firm that might be occasioned by the transfer. Rainwater concluded by saying that his firm would assign 35 percent of the experience to Gill after receiving figures for any additional cost from AESD.

Gaddy replied to Rainwater by letter dated April 10, 1987, notifying him that any future costs could not now be calculated. Gaddy then set out the position of AESD relative to Gill's failure to meet the October 29, 1986 deadline:

> Efforts by members of our Contribution staff to resolve the transfer of experience issue last summer proved futile. One of our staff attorneys, George Wise, Jr., explained our position to Mr. Gill in a telephone conversation last September 10, 1987. Mr. Gill agreed to submit a petition requesting transfer of the experience rate signed by all interested parties by October 29, 1986. In confirming this agreement, I advised Mr. Gill that should he be unable to meet the October 29, 1986, deadline, we would have no choice under the law but to deny his request.
>
> Although you may submit a petition requesting transfer of the experience rate, a petition submitted now would be untimely. Your letter of April 2, 1987, is not acceptable as a petition as it is not signed by all interested parties. Further, in our opinion, a petition may not be conditioned

on future experience rates (see Arkansas Statute Anno-
tated Section 81-1108(e)(2).

Gill was not sent a copy of this letter until the latter part of 1987.

From April 1, 1986, forward, Gill paid unemployment
compensation taxes based on the 1.3 percent experience rate
assigned to his former firm. AESD, however, adhered to the 3.4
percent rate and assessed additional taxes and interest against
Gill in the amount of $4,860.70. To enforce the assessment,
AESD filed liens against the appellants' property. On October 6,
1988, the appellants filed their complaint against the appellees in
chancery court and prayed 1) to enjoin AESD from executing on
the liens and to expunge those liens; 2) to declare that AESD's
actions were violative of Gill's due process rights; and 3) to order a
transfer of part of the experience from Gill's predecessor law firm
to his present law firm. AESD moved for summary judgment on
May 1, 1989, and the chancery court granted the motion.

Gill argues first that there were issues of material fact
that militate against summary judgment in this case. The
appellants are correct that we have held many times that
summary judgment is an extreme remedy; that if there are issues
of material fact to be decided, summary judgment is not appro-
priate; that the burden of proving no issues of material facts was
on the appellees; and that all proof submitted must be viewed in
favor of the appellants and all inferences and doubts resolved
against the appellees. *See, e.g., Car Transportation* v. *Garden
Spot Distributors*, 305 Ark. 82, 805 S.W.2d 632 (1991); *Morris*
v. *Valley Forge Ins. Co.*, 305 Ark. 25, 805 S.W.2d 948 (1991);
*Guthrie* v. *Kemp*, 303 Ark. 74, 793 S.W.2d 782 (1990); *see also*
Ark. R. Civ. P. 56(c).

In this case, however, the law is clear and specific on what is
required to transfer part of a predecessor firm's experience from
one employer to another. *See* Ark. Code Ann. § 11-10-710(b)(1)
(1987). The statute first contemplates an acquisition by the
successor employer of part of the predecessor's business. It then
requires that "if the successor desires to obtain any benefit of his
predecessor's experience, the successor must file with the admin-
istrator a petition, signed by all interested parties, within thirty
(30) days after the transfer setting out the percentage of the
predecessor's experience that should be transferred to the succes-

sor's account." Under the statute, if the AESD administrator finds the facts "substantially as represented," he shall transfer the proportionate share of the predecessor's experience to the new employer. *See* Ark. Code Ann. § 11-10-710(b)(2) (1987).

Here, no petition signed by all interested parties was ever filed with AESD. Indeed, under the facts before us there is no evidence that Gill's predecessor law firm and his new law firm ever consummated a transfer of experience. Rainwater's letter to Gaddy only contemplates such a transfer. And under the statute it is the consummated transfer that triggers the filing of the petition. Moreover, according to the complaint and discovery, Gill and his predecessor firm did not even agree on the portion of the predecessor business acquired by Gill until June 1987. The percentage of the business acquired would have a bearing on, if not be conclusive of, the portion of experience to be transferred.

Gill argues before us that the Rainwater letter to Gaddy dated April 2, 1987, was, in effect, evidence of the transfer of the experience rate to Gill and that it should have been treated also as a petition to AESD for the transfer of the segregable experience under Ark. Code Ann. § 11-10-710(b)(1).

But the Rainwater letter only sets forth the percentage of the experience tax rate to be transferred, and therein lies the problem. If no portion of the experience had been *finally* transferred as of April 2, 1987 (and the letter from Rainwater to Gaddy confirms that), there could be no valid petition to submit to AESD. A transfer of the experience between employers must necessarily precede the filing of the petition signed by all interested parties under § 11-10-710(b)(1). Even had a transfer occurred as of the date of Rainwater's letter, the letter does not qualify as substantial compliance with the petition requirement because it does not ask for approval and was not signed by all interested parties. The chancellor, therefore, was eminently correct in her finding of lack of compliance with the requirements of § 11-10-710(b)(1).

We have held in the past that substantial compliance with §11-10-710(b)(1) is sufficient for the transfer of a predecessor's experience. *See Hayes* v. *Ward Ice Cream Co.*, 258 Ark. 309, 523 S.W.2d 923 (1975). In *Hayes* the new employer mailed to AESD the Report to Determine Liability signed by him and reflecting

the names and addresses of the predecessor and successor firms and the date of acquisition of a portion of the business. The successor employer did not file a petition with AESD, however, requesting a transfer of part of the predecessor's experience rating. Nevertheless, we held that the information contained in the Report to Determine Liability was enough information to constitute an application for a portion of the predecessor's experience rating. It bears mention, however, that the acquisition in *Hayes* occurred in 1970, which was prior to the enactment of Act 35 of 1971. Act 35 required for the first time that a petition, signed by all interested parties, be filed with the AESD. (*See*, for example, Act 93 of 1963, which was in effect in 1970 and which required that only an "application" be submitted by the successor employer.)

■ Here, insufficient information was provided to AESD to evidence a definite acquisition of part of the business by Gill or any transfer of part of the predecessor's experience. First, Gill does not argue that his Report to Determine Liability was in the nature of a petition, as was done in *Hayes*, though that Report, filed on June 2, 1986, shows an acquisition of 40 percent of the predecessor firm. He argues instead that Rainwater's letter to Gaddy dated April 2, 1987, was in the nature of a petition. Yet, that letter quotes their agreement whereby the predecessor firm will "use their best efforts" to assign 35 percent of their rating to Gill, conditioned on there being no additional cost to the firm. By its terms the letter is void of the definiteness and specificity necessary to qualify for a factual finding by the AESD administrator that a transfer of experience should occur.

■ The chancery court was further correct in finding that Gaddy's response to Rainwater did not amount to a "determination" by AESD under the Code. *See* Ark. Code Ann. § 11-10-710(d)(1) (1987). Without the completed acquisition of a portion of the predecessor's firm's business and without the actual transfer of a specific percentage of the predecessor firm's experience and without a petition filed with AESD and signed by all interested parties so that AESD could finalize the transfer, it logically follows that there can be no determination of the allocated experience by the AESD administrator. Under these circumstances the existence of a determination was not a material issue of fact remaining to be decided.

■ Nor did the chancery court err in finding that Gill never sought a hearing before AESD regarding its acquisition of part of the predecessor firm in June 1987. It is clear that Gill requested two hearings pertaining to his liability as a new employer in 1986. But equally as clearly, those requests could not have related to a June 1987 acquisition and the resulting transfer of experience, and it is that acquisition to which the chancery court referred. Even if Gill is correct that the experience transfer was evidenced by Rainwater's April 2, 1987 letter, requests for hearings made in 1986 were premature. Moreover, § 11-10-710(b)(1) does not contemplate hearings on experience transfers, and Gaddy so advised Gill in his letter of September 15, 1986.

But the statute does provide ample opportunity for a disgruntled employer to pursue his remedies. First, he has the right to file an application for review and redetermination within twenty days of a determination. Ark. Code Ann. § 11-10-711(d)(1) (1987). Gill believed that the AESD administrator made a determination in his April 10, 1987 letter to Rainwater, but Gill did not apply for review. An employer's remedies also lie in chancery court. *See* Ark. Code Ann. § 11-10-710(d)(3) (1987); *Jones* v. *Crouch*, 231 Ark. 720, 332 S.W.2d 238 (1960). And this is the course that Gill chose to pursue.

■ For his second issue Gill argues that a material issue of fact exists regarding whether the General Assembly has delegated to predecessor employers the authority to control successor employers' unemployment compensation taxes. To be sure, § 11-10-710(b)(1) appears to contemplate an agreement between predecessor and successor employers on the experience to be transferred, when it refers to a petition "signed by all interested parties." Contrary to Gill's argument, however, the General Assembly has not delegated taxing authority to the predecessor firms. The tax rate for new employers is fixed by legislative enactment. See Ark. Code Ann. §§ 11-10-702 (1987) and 11-10-706 (Supp. 1989). The General Assembly has also specifically established a statutory mechanism for AESD to administer transfers of portions of a predecessor's experience, when the predecessor and successor employers agree. In effect, the AESD administrator performs a ministerial function in examining the accuracy of the experience to be transferred. In the event there is no agreement, or, as Gill argues, the predecessor firm is recalci-

trant, the successor employer may pursue his remedies against the predecessor in court. These remedies against the predecessor are in addition to any remedies that the successor employer may have against AESD under the statute, as already noted. Here, Gill pursued his remedy in chancery court, and the chancellor found no illegal delegation due to the requirement that the predecessor firm concur in the petition to transfer. We agree.

Nor does the process set out in Ark. Code Ann. §11-10-710 constitute an illegal exaction due to predecessor control for the reasons already stated.

The chancery court order is affirmed.

NEWBERN, J., not participating.