Theodore JONES et al *v.* Steve CLARK,
Attorney General of the State of Arkansas

82-193                                    644 S.W.2d 257

Supreme Court of Arkansas
Opinion delivered January 10, 1983

*Henry Clay Moore,* for appellants.

*W. Russell Meeks, III,* for appellee.

GEORGE ROSE SMITH, Justice. This suit was brought by the appellants, as citizens and taxpayers, to obtain a declaratory judgment holding that the appellee, Steve Clark, is in violation of Article 6, Section 22, of the Constitution of Arkansas as long as he serves as attorney general and simultaneously holds a commission as a captain in the United States Army Reserve. (By an amended pleading the plaintiffs sought alternative relief in quo warranto, but we need not explore that avenue.) The appellee raises assorted defenses to the suit: That the plaintiffs lacked standing to sue, that a declaratory judgment is not appropriate, that there is in fact no violation of Article 6, Section 22, and that if there is such a violation then Section 22 is void under two clauses of the United States Constitution.

The pertinent facts were established at a brief trial. In 1968 Mr. Clark was appointed by the President of the United States as "a Reserve Commissioned Officer in the Army of the United States." Mr. Clark then went to law school. After that he served several tours of active duty as a reserve officer before entering the practice of law in 1976. As a reserve officer he still attends a monthly drill assembly and a two-week period of summer training, for which he is paid by the United States. He was elected attorney general in 1978 and was serving in his second term when this case was tried. He has since been elected to a third term.

The circuit judge recognized the plaintiffs' standing to bring this suit, but he held that, procedurally, a declaratory

judgment would not settle the controversy and, substantively, no violation of Article 6, Section 22, exists. We disagree with both his conclusions.

Procedurally, the taxpayers' complaint asserts that it is filed under Article 16, Section 13, of our constitution, which provides that any citizen may bring suit to protect the public against the enforcement of illegal exactions. In a similar situation involving dual office-holding we decided that under this constitutional provision complaining taxpayers are entitled to injunctive relief against the illegal spending of public funds. *Starnes* v. *Sadler,* 237 Ark. 325, 372 S.W.2d 585 (1963). That suit for an injunction was properly in the chancery court, but the constitution does not specify the court in which the taxpayer's cause of action may be asserted nor the form of action that is available to him. When, as here, there will be an established illegal exaction if the public officer persists in a constitutional violation, an action in the circuit court for a declaratory judgment is well chosen. A declaratory judgment is "a remedy peculiarly appropriate to controversies between private citizens and public officials about the meaning of statutes." *Culp* v. *Scurlock,* 225 Ark. 749, 284 S.W.2d 851 (1955). That statement applies equally to controversies about the interpretation of the constitution. Moreover, as we went on to say in *Culp:* "Since the effect of a declaratory judgment in this case will be to terminate an actual controversy in a matter of public interest, it is manifestly desirable that the case be decided on its merits." Here too that is true.

Substantively, the language of Article 6, Section 22, is too simple, too clear, too pointed, to be misunderstood:

> The Treasurer of State, Secretary of State, Auditor of State and Attorney General shall perform such duties as may be prescribed by law; they shall not hold any other office or commission, civil or military, in this State or under any State, or the United States, or any other power, at one and the same time . . . .

Here Mr. Clark seeks to hold at one and the same time the office of attorney general and a military commission under

the United States. There could be no more clear-cut violation of the constitutional prohibition, if it stood alone. There must also be considered, however, the language of Article 19, Section 26:

> Militia officers, officers of the public schools and notaries may be elected to fill any executive or judicial office.

The question is, does the reference to "militia officers" include a United States army reserve officer, who is appointed by the president and is not subject to any control by the State of Arkansas? The answer must be, No. The first significant reference to the militia is in the United States Constitution, Article 1, Section 8, which declares that Congress shall have the power:

> To provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, *reserving to the states respectively, the appointment of the officers* . . . . [Our italics.]

By the explicit language of the Constitution the president cannot appoint an officer of the militia. Mr. Clark's presidential appointment therefore did not make him an officer of the militia.

Additionally, Article 6, Section 6, of our own constitution makes the governor the commander-in-chief of the state's military forces, except when in federal service. Article 11, Section 1, defines the militia as consisting of all able-bodied male residents of the state between the ages of 18 and 45. The implementing statutes distinguish between the organized militia (the National Guard) and the unorganized militia (the other specified resident males). Ark. Stat. Ann. § 11-102 (Repl. 1976). Neither category embraces the United States army reserve. Thus both the United States Constitution and the Arkansas Constitution compel the conclusion that Mr. Clark is not a militia officer as contemplated by Article 19, Section 26. (We do not reach the appellants' argument that the statement in that section that militia

officers "may be elected" to any executive or judicial office means that they as candidates may be elected but cannot serve without relinquishing their office in the militia.)

Finally, there is no substance to the appellee's argument that Section 22 of Article 6 violates the United States Constitution. Since the militia is ordinarily an arm of the state government, the state may without any denial of the equal protection of the laws permit a militia officer to seek or hold an elective office while denying that privilege to an officer whose allegience is to some other sovereign. Such a classification is manifestly reasonable. Moreover, Mr. Clark voluntarily sought the office of attorney general, as defined by the constitution, and is not in a position to accept the benefits of the office and at the same time disclaim its restrictions. See *Johnson* v. *Darnell*, 220 Ark. 625, 249 S.W.2d 5 (1952). The argument that the limitation upon the four constitutional officers impairs the nation's ability to wage war is not of sufficient merit to call for discussion.

This opinion will serve as a judgment declaring the law. The trial court's judgment is reversed, and the cause is remanded for any further proceedings that may be appropriate if the declared violation of the constitution continues.

Reversed and remanded.

ADKISSON, C.J., dissents.

RICHARD B. ADKISSON, Chief Justice, dissenting. The majority has interpreted Article 6, Section 22 of the Arkansas Constitution as prohibiting a reserve officer from serving as attorney general, even though Article 19, Section 26 of our constitution expressly allows a "militia officer", (defined by Ark. Stat. Ann. § 11-102 [Repl. 1976] as a national guardsman) to hold that same office. The majority has erroneously concluded, without discussion, that such is not a violation of the equal protection clause of the United States Constitution. I cannot agree with that conclusion since both a reserve officer and a national guardsman are citizen soldiers

and, therefore, within the meaning of "militia officer" under Article 19, Section 26.

The equal protection clause requires that persons in similar circumstances be treated alike. *Hartford Steam Boiler Inspection & Ins. Co.* v. *Harrison,* 301 U.S. 459 (1937). There is a "federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications." *Turner* v. *Fouche,* 396 U.S. 346 (1970). The privilege of holding public office cannot be denied to some while extended to others on the basis of distinctions that violate federal constitutional guarantees. *Turner* v. *Fouche, supra.*

In refusing to accord a reserve officer the same right to serve as attorney general as a national guardsman, the majority totally ignores the fact that the functions and purposes of the reserves are consistent with those of the National Guard. Both are made up of citizen soldiers, trained to military duty, who may be called out in certain cases but who may not be kept on service like standing armies. *Cf. United States* v. *Miller,* 307 U.S. 174 (1938). Both are composed of men ordinarily occupied in the pursuits of civil life but who can be called into the field for temporary military service when the exigencies of the country require it. *Cf. State Ex. rel. McGaughey* v. *Grayston,* 349 Mo. 700, 163 S.W.2d 335 (1942). Service in the National Guard and the reserves can be distinguished from service in the regular army which denotes professional permanent soldiery; i.e., those who have chosen the military as a career. *Cf. Critchlow* v. *Monson,* 102 Utah 378, 131 P.2d 794 (1942). To treat the two differently clearly violates the equal protection clause of the United States Constitution.

The majority attempts to justify its disparate treatment of the two by classifying the National Guard as state and the reserves as federal and cites various constitutional provisions in an effort to highlight the distinction. But the fact of the matter is that the National Guard is so intertwined with the federal defense system that any alleged federal/state distinction is without merit. Article 1, Section 8 of the United States Constitution and Ark. Stat. Ann. § 11-204

(Repl. 1976) provide that the National Guard shall be organized, equipped, armed, disciplined, governed, administered and trained as prescribed by the laws of the United States; the pay is the same for both under Ark. Stat. Ann. § 11-901 (Repl. 1976). Both national guardsmen and the reserve branches of the armed forces are allowed two weeks with pay from state employment for annual training in addition to regular vacation time. Ark. Stat. Ann. § 12-2370 (Repl. 1979).

Furthermore, Article 1, Section 8 of the United States Constitution expressly provides that the militia (National Guard) "may be employed in the service of the United States . . . " And, Article 6, Section 6 of our own constitution expressly recognizes that the militia can be in federal service. Therefore, the majority's attempted distinction between a militiaman with supposed state loyalties and a reserve officer "whose allegience is to some other sovereign" is unrealistic, particularly where both take an oath to uphold the Constitution of the United States.

The equal protection clause of the 14th amendment to the United States Constitution requires that Steve Clark, as a reserve officer, be afforded the same right to serve as attorney general as would an officer of the National Guard.