Theresa POCKRUS, Benton County Tax Collector, and Shirley Sandlin, Benton County Tax Collector *v.* BELLA VISTA VILLAGE PROPERTY OWNERS ASSOCIATION

93-531 · 872 S.W.2d 416

Supreme Court of Arkansas
Opinion delivered March 28, 1994

*George R. Spence*, Deputy Prosecuting Attorney, for appellants.

*R. Douglas Schrantz*, for appellee Bella Vista Village Property Owners Association.

*W. Paul Blume*, for amicus curiae Arkansas School Board Assocation.

*Winston Bryant*, Att'y Gen., by: *Dinah M. Dale*, Asst. Att'y Gen., for amicus curiae Assessment Coordination Division.

TOM GLAZE, Justice. This appeal ensues from the Benton County Chancery Court's decision to enjoin Theresa Pockrus, the Benton County Tax Collector, from collecting the 1991 ad valorem taxes owed by Bella Vista Village Property Owners Association. Those taxes were the result of a reappraisal and reassessment commenced in 1990. Benton County assessor, Shirley Sandlin, utilized a cyclical reassessment plan recommended by the Arkansas Assessment Coordination Division (ACD) which would permit Sandlin, with her limited staff, to complete within a five-year period, the reappraisal of all property located throughout the entire county. Surveys showed that Benton County's annual assessment ratio was about to fall below the minimum required eighteen percent, and as a consequence, was in jeopardy of losing "state turnback" money.

Bella Vista Village filed suit, alleging that the collection of taxes based on the reassessment plan used by Sandlin and Pockrus was illegal. It asked further that the chancery court enjoin the collection of the 1991 ad valorem taxes until a proper county-wide assessment is achieved. The chancellor granted the relief sought, and Sandlin and Pockrus bring this appeal.

The parties' dispute centers on the ACD's cyclical reappraisal plan. Based on that plan, Sandlin divided the county real estate parcels into four and one-half areas and each area was to be reassessed annually over a five-year period. Each area includes numerous taxing units (towns, school districts, improvement districts) which require the application of various millage rates. Under the plan, Bella Vista Village was the first area reassessed because it (1) had the largest number of parcels in the county, (2) had the greatest number of taxpayer complaints requesting assessment adjustments, and (3) contained the greater number of variances.

At trial, Bella Vista Village first contended that the cyclical reassessment plan used by Sandlin and Pockrus violated the Equal Protection Clause of the United States and Arkansas Constitutions. Bella Vista Village pointed out that, because its property would be reassessed the first year, it would pay immediately based on the new assessed value while the remaining four areas would continue to be taxed based on old assessment values. It argued this disparate treatment of taxpayers would exist for four years or until the fifth or last area is reassessed. The chancellor rejected this equal protection argument finding that Bella Vista Village had failed to show that varying economic conditions which might occur during the five-year reassessment scheme would not cause adjustments which would allow a constitutionally permitted "rough equality" in tax treatment for all real property owners. *See Allegheny Pittsburgh Coal Co.* v. *County Comm'n of Webster County, West Virginia,* 488 U.S. 336, 343 (1988).

Although the chancellor discarded Bella Vista Village's first argument, he did find merit in its second contention that ACD's recommended cyclical reassessment plan violates Ark. Const. art. 16, § 14, which incorporates most of Ark. Const. amend. 59.[1] In his findings, the chancellor stated as follows:

---

[1]Amendment 59 is now compiled in Ark. Const. art. 16, § § 14, 15 and 16.

Art. 16, § 14(a), and its enabling statutes, provide a safeguard that, if reassessment shall result in an increase in the aggregate value of taxable real and personal property in *any taxing unit* in this state of ten percent or more over the previous year, the rate of city or town, county, school district and community college district tax levied against the taxable real and personal property of *each taxing unit shall, upon completion* of the reappraisal, *be adjusted or rolled back* by the governing body of the taxing unit *for the year for which levied.* (the chancellor's emphases)

After stating the foregoing, the chancellor found that Bella Vista Village's parcels are partially located in three different school districts (taxing units), and under ACD's cyclical reassessment plan, a complete appraisal or reassessment would not be performed during the plan's first year in any of the three taxing units. Thus, he concluded ACD's reassessment plan violated Amendment 59 because it prevented Bella Vista Village taxpayers from receiving the benefits of equalization of taxes (roll back in taxes) provided for and allowed under that Amendment. In sum, the chancellor held the reassessment plan or procedure the county assessor and collector used to revalue property and levy taxes was in conflict with the state constitution. He stated further that, under Amendment 59, every taxpayer has the right to review the comparisons between the increase in the aggregate value of taxable property in each taxing unit in the year in which the tax collection is levied to be confident that he is paying only his fair share of the tax burden.

■ While we would like to reach the merits of the trial court's rulings, we find it impossible to do so because that court had no subject-matter jurisdiction of this matter. It is settled law that county courts have exclusive jurisdiction in all matters relating to county taxes. *McIntosh* v. *Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990); Ark. Const. art. 7, § 28. Nonetheless, there is no doubt that a court of equity may grant relief against a void or illegal tax assessment. *Scott County* v. *Frost*, 305 Ark. 358, 807 S.W.2d 469 (1991). In *Cook* v. *State*, 312 Ark. 438, 850 S.W.2d 309 (1993), this court set out a number of cases where the collection of taxes had been successfully enjoined under the illegal exaction provision. *See Greedup* v.

*Franklin County*, 30 Ark. 101 (1875) (an attempt to collect a county levy in excess of the five mills allowed by the constitution); *Lyman* v. *Howe*, 64 Ark. 436, 42 S.W. 830 (1897) (a tax based upon an assessment not made by the assessor); *Ragan* v. *Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986) and *Merwin* v. *Fussell*, 93 Ark. 336, 124 S.W. 1021 (1910) (attempts to collect taxes not properly voted by the people); *McDaniel* v. *Texarkana Cooperage & Mfg. Co.*, 94 Ark. 235, 126 S.W. 727 (1910) (a tax levied by a county having no jurisdiction over the property); *City of Little Rock* v. *Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982) and *Waters Pierce Oil Co.* v. *Little Rock*, 39 Ark. 412 (1882) (taxes which were not authorized by the city's delegated power of taxation).

Although illegal taxes can be enjoined by a court of equity, this court has also strictly adhered to the rule that, if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie. *Miller* v. *Leathers*, 312 Ark. 522, 851 S.W.2d 421 (1993); *Schuman* v. *Ouachita County*, 218 Ark. 46, 134 S.W.2d 42 (1950). The *Miller* court, quoting from *Pledger* v. *Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992), stated the established rule that a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal. *See also Scott County*, 305 Ark. 358, 807 S.W.2d 469; *McIntosh*, 304 Ark. 224, 800 S.W.2d 431.

Unquestionably, the ad valorem property taxes assessed here against Bella Vista Village are authorized by law. *See* Ark. Const. art. 16, § 5. And Bella Vista Village does not object to the actual valuations (current market value) or tax formula used to calculate the 1991 taxes. Instead, it contends only that the reassessment and tax collection scheme used by Sandlin and Pockrus to collect these *legal* ad valorem taxes is unconstitutional. In other words, Bella Vista Village effectually questions only the reassessment procedure or plan employed by the county assessor and collector as being a flawed one. Because this case does not involve a void or illegal tax assessment, the chancery court was without power to hear this matter. Therefore, we must reverse and dismiss.

CORBIN, J., not participating.