Floyd G. VILLINES III *et al. v.*
PULASKI COUNTY BOARD of EDUCATION *et al.*

99-1405                                                                    14 S.W.3d 510

Supreme Court of Arkansas
Opinion delivered April 20, 2000

*David B. Bogard*, Chancellor;

*Pulaski County Attorney's Office*, by: *Amanda Mankin, Karla M. Burnett*, and *Keith L. Chrestman*, for appellants.

*W. Paul Blume*, for appellees.

DONALD L. CORBIN, Justice. Appellants Floyd G. "Buddy" Villines III, in his official capacity as Pulaski County Judge, and Pat Tedford, in her official capacity as Pulaski County Treasurer, appeal the judgment of the Pulaski County Circuit Court finding that Appellants were estopped from removing $109,332.51 from the Pulaski County Common School Fund and requiring a return of the money to that fund. Appellees Pulaski County Board of Education and its individual members cross-appeal the trial court's finding that Act 213 of 1997 is constitutional. We have jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (b)(1) & (6). Appellants argue that the trial court lacked subject-matter jurisdiction to hear this claim. We agree, and we reverse.

The record reflects that for a period of approximately forty years prior to 1997, the Pulaski County Treasurer divided penalty payments from delinquent taxes equally between the common school fund and the Pulaski County General Fund. The parties agree that until February 19, 1997, there was no statutory authority for such division and disbursement. On that date, however, Governor Mike Huckabee signed Act 213, now codified at Ark. Code Ann. § 26-36-209 (Supp. 1999), which provided that all such penalties are to be divided equally between the common school fund and the county general fund if such division was the practice at the time of the statute's enactment.

On March 27, 1997, Appellant Villines signed an executive order removing all funds placed in the common school fund for the months of January, February, and March 1997. Those funds totaled $109,332.51, and were subsequently transferred to the county general fund. Appellees filed suit in circuit court alleging that the order removing the funds violated section 26-36-209. Specifically, Appellees contended that Appellants were estopped from removing such funds because of their prior practice of placing those monies in the common school fund.

Appellees sought a declaratory judgment that the removal was illegal and further requested that Appellants be required to return the money to the common school fund. Appellants filed a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(1) and (6) alleging lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted. In an order dated May 20, 1998, the circuit court found that it had jurisdiction over the subject matter of the claim. The court went on to find that Act 213 was constitutional because its provisions did not conflict with Article 16, § 11, of the Arkansas Constitution. The court further found that the Act was "enacted" for purposes of the statutory language on February 19, 1997, the date the governor signed the act. Finally, the court reserved ruling on the issue of whether the State was estopped from discontinuing payments or withdrawing payments already made. A hearing was held on February 1, 1999, to decide the estoppel issue. The circuit court ultimately entered an order finding that Appellants were estopped from removing the $109,332.51 and required Appellants to return the money to the common school fund. This appeal followed.

Appellants' initial argument on appeal is that the circuit court lacked subject-matter jurisdiction to hear this claim because county courts have jurisdiction over cases involving county funds. Appellees respond by arguing that school taxes are the subject of this lawsuit, not county taxes; thus, county court does not have jurisdiction. We agree with Appellants that the circuit court lacked subject-matter jurisdiction.

■ Article 7, § 28, of the Arkansas Constitution provides that county courts shall have exclusive original jurisdiction over all matters relating to county taxes. This jurisdictional rule is also set out in Ark. Code Ann, § 14-14-1105(b)(1) (Repl. 1998). It provides in relevant part:

> Jurisdiction shall include all real and personal ad valorem taxes collected by a county government, including all related administrative processes, assessment of property, equalization of assessments on appeal, tax levies, tax collection, and distribution of tax proceeds.

Moreover, this court has repeatedly held that county courts have exclusive jurisdiction in all matters relating to county taxes. *Pockrus v. Bella Vista Village Property Owners Ass'n*, 316 Ark. 468, 872 S.W.2d 416 (1994); *McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990). Even though the present matter does not involve a county tax, it certainly involves a matter relating to a county tax, namely, the assessment of a penalty resulting from the delinquent payment of county taxes.

■ Appellees attempt to argue that this matter involves an illegal exaction because a tax levied for schools was being used for another purpose in contravention of Article 16, § 11. This argument fails for two reasons. First, this matter does not involve any tax, but rather a penalty assessed because of late payment of all *ad valorem* taxes, not just school taxes. Second, the issue here is one involving a procedural matter, namely, how to distribute collected penalties. This is more analogous to those procedural matters involving erroneous assessments or collections. In *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 901 S.W.2d 809, *reh'g granted on other grounds*, 321 Ark. 116-A, 901 S.W.2d 809 (1995), this court pointed out the distinction between a suit alleging that a tax is illegal and one alleging that a lawful tax is being erroneously assessed or collected. With regard to the latter, we stated that

subject–matter jurisdiction belonged exclusively in county court. Likewise, subject–matter jurisdiction over this matter belongs exclusively in county court. Because we hold that the circuit court lacked subject–matter jurisdiction to hear this claim, it not necessary to address Appellants' other points on appeal or Appellees' point on cross-appeal. We thus reverse and dismiss this matter.

GLAZE and IMBER, JJ., concur.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur with the majority but write to further expand on the majority's analysis regarding whether the penalty payments from delinquent *ad valorem* taxes involve "monies arising from a tax levied for one purpose" under Article 16, § 11, of the Arkansas Constitution. Although a penalty certainly is a sum of money, the assessment of a penalty occurs only when there is a late payment of the tax. Thus, the money derived from a penalty arises from the late payment of the tax and not directly from the tax itself. Moreover, because the penalty is an amount certain (ten percent of the delinquent tax), it does not represent an interest charge for the use of the tax money over time. For these reasons, it is reasonable to conclude that the assessment of a penalty on delinquent ad valorem taxes is a *punishment* for late payment of those taxes. Consequently, the monies collected as a result of those penalties arise from the late payment of ad valorem taxes and not from the taxes themselves.

GLAZE, J., joins in this concurrence.