Cite as 2024 Ark. 34

# SUPREME COURT OF ARKANSAS
**No.** CV-23-326

| | |
|---|---|
| RONALD DAVID KIMBROUGH AND MITZI KIMBROUGH, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED TAXPAYERS<br><br>APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br>RODERICK GRIEVE, IN HIS OFFICIAL CAPACITY AS BENTON COUNTY ASSESSOR, ET AL.<br><br>APPELLEES/CROSS-APPELLANTS | **Opinion Delivered:** March 28, 2024<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-21-2250]<br><br>HONORABLE GARY ARNOLD, JUDGE<br><br><u>AFFIRMED ON DIRECT APPEAL; CROSS-APPEAL DISMISSED AS MOOT.</u> |

## BARBARA W. WEBB, Justice

Ronald David Kimbrough and Mitzi Kimbrough (the Kimbroughs), as lead plaintiffs in an illegal exaction suit, appeal the dismissal of their class-action complaint. On appeal, they argue that the circuit court erred in dismissing their third amended complaint for lack of subject-matter jurisdiction based on their failure to exhaust administrative remedies. They assert that illegal-exaction claims are not subject to administrative exhaustion of remedies. Roderick Grieve, in his official capacity as Benton County Assessor, and the assessors from the seventy-four other Arkansas counties (hereinafter, "the counties") have cross-appealed on a contingency basis, arguing that if we do not affirm the circuit court's finding that it did not have subject-matter jurisdiction, we should (1) affirm the dismissal of the non-Benton County defendants for lack of personal jurisdiction and improper venue; (2) hold that Act

49 of 2017 does not violate Amendment 79 and affirm the court's dismissal of the Kimbroughs' primary claim under Ark. R. Civ. P. 12(b)(6); (3) hold that reappraisal of property as provided by statute does not violate Amendment 79 and affirm the court's dismissal of the Kimbroughs' alternative claim; (4) hold that past damages assessed against the counties are barred as a matter of law. We affirm on direct appeal and dismiss the cross-appeal as moot.

## I. *Facts*

In pertinent part, Act 49, codified at Arkansas Code Annotated section 26-26-1122(a), amended the definition of "assessed value" for both ad valorum taxation and Amendment 79 of the Arkansas Constitution to read, (1) "Assessed value" means 20 percent of the appraised value of the real property." Amendment 79 states in pertinent part:

> § 1. Assessed value adjustment.
> (d)(1)(A) A homestead used as the taxpayer's principal place of residence purchased or constructed on or after January 1, 2001, by a disabled person or by a person sixty-five (65) years of age or older shall be assessed thereafter based on the lower of the assessed value as of the date of purchase or construction or a later assessed value.
> (B) When a person becomes disabled or reaches sixty-five (65) years of age on or after January 1, 2001, that person's homestead used as the taxpayer's principal place of residence shall thereafter be assessed based on the lower of the assessed value on the person's sixty-fifth birthday, on the date the person becomes disabled or a later assessed value.
> (C) If a person is disabled or is at least sixty-five (65) years of age and owns a homestead used as the taxpayer's principal place of residence on January 1, 2001, the homestead shall be assessed based on the lower of the assessed value on January 1, 2001, or a later assessed value.
> (2) Residing in a nursing home shall not disqualify a person from the benefits of this subsection (d).
> (3) In instances of joint ownership, if one of the owners qualifies under this subsection (d), all owners shall receive the benefits of this amendment.
> (4) This subsection (d) does not apply to substantial improvements to real property.

The Kimbroughs, on behalf of themselves and all other similarly situated taxpayers, brought what they believed was an illegal-exaction suit against all seventy-five Arkansas counties (the counties), to enforce Amendment 79 of the Arkansas Constitution. The third amended complaint sought a declaration that Act 49 of 2017 is unconstitutional and that Amendment 79 prohibits the counties from increasing the assessed value of a homestead purchased by a person who is disabled or over the age of sixty-five above the assessed value of the homestead "as of the date of purchase." In the alternative, the Kimbroughs sought a declaratory judgment that Amendment 79 requires the counties to freeze the assessed value of a homestead purchased by a person who is disabled or over the age of sixty-five at 20 percent of the appraised value as of the date of purchase—not after a subsequent reappraisal.

The third amended complaint defined the class as

all "qualified taxpayers" defined as being over the age of 65 and/or being disabled and (1) have purchased or constructed a homestead after January 1, 2001 as the taxpayer's principal place of residence, (2) did not make any substantial improvement to the homestead, (3) whose assessed value for said homestead is not based on the assessed value (as that term is used in Amendment 79) at the date of purchase or construction but is, instead, based on a subsequently increased assessed value, and has or is subject to the payment of real estate taxes during the past three years based on the subsequently increased assessed value of their homestead.

The complaint further stated that "[t]he Plaintiffs are not challenging the valuation of any appraisal but are challenging that any increase in the assessed value (as that term is used in Amendment 79) after the date of purchase by a qualified taxpayer is illegal under Amendment 79 to the Arkansas Constitution. This action is brought solely to enforce Amendment 79." Additionally, the complaint recites that the Kimbroughs, who are qualified persons under Amendment 79, received notice of their homestead's reappraisal the

3

year after they purchased it and were unlawfully charged a higher assessed value on the basis of that reappraisal—in direct violation of Amendment 79. Thus, for at least a subclass of qualified individuals, the counties did not freeze the assessed value of the taxpayers' homestead at even 20 percent of the appraised value as of the date of purchase. Instead, they determined the assessed value on the basis of a reappraisal and reassessment that went into effect the year after the date of purchase and then failed to roll back or adjust the assessed value to the value existing at the time of purchase (as required by Amendment 79).

The counties filed a motion to dismiss. They asserted that the circuit court lacked subject-matter jurisdiction because the Kimbroughs were required to challenge the assessed value of their property through a statutory appeal process but failed to exhaust, or even pursue, their administrative remedies. Further, the counties argued that original jurisdiction over matters related to county taxes lies in county court, not circuit court.

In its order granting the counties' motion to dismiss, the circuit court found it lacked subject-matter jurisdiction because "[the Kimbroughs] did not avail themselves of the statutory appeal process through the county equalization board, and the county court, to properly dispute their property's assessed value." Citing *May v. Akers-Lang*, 2012 Ark. 7, 386 S.W.3d 378, the circuit court found that the Kimbroughs "failed to exhaust their administrative remedies," thereby depriving the court of subject-matter jurisdiction.

## II. *Standard of Review*

This court reviews de novo the circuit court's dismissal of the third amended complaint, treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiffs. *McGhee v. Ark. St. Bd. of Collection Agencies*, 360 Ark. 363,

4

368, 201 S.W.3d 375, 377–78 (2005). When interpreting the Arkansas Constitution, this court's task "is to read the law as it is written and interpret it in accordance with established principles of constitutional construction." *Proctor v. Daniels*, 2010 Ark. 206, at 5, 392 S.W.3d 360, 363. "Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning; neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision." *Gray v. Mitchell*, 373 Ark. 560, 567, 285 S.W.3d 222, 229 (2008).

III. *Argument on Appeal*

The Kimbroughs' argument that the circuit court erred in dismissing their complaint because it lacked subject-matter jurisdiction has four main subparts: (a) the circuit court's order conflicts with binding precedent; (b) circuit courts have subject-matter jurisdiction to resolve this case; (c) illegal-exaction cases do not require exhaustion of remedies; (d) the circuit court order creates serious practical and policy concerns. We will address each subpoint in turn.

A. Whether the Circuit Court's Order Conflicts with
Binding Precedent

The Kimbroughs rely on two cases that they claim are dispositive: *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997), and *Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870. The Kimbroughs contend that *Barker* supports their assertion that they properly brought an illegal-exaction suit under article 16, section 13 of the Arkansas Constitution because, while the taxes themselves are not illegal, the assessment violates Amendment 79, because it does not freeze the assessment when the taxpayer turns sixty-five or becomes disabled. They argue that the case at bar is similar to the suit in *Barker*, which challenged an

illegal tax because "the issue is the tax itself, which allegedly exceeds constitutional limits." *Barker*, 327 Ark. at 600, 939 S.W.2d at 842. According to the Kimbroughs, this led the *Barker* court to conclude that "a valid claim for an illegal exaction has been raised." *Id*. In short, the Kimbroughs contend that a suit claiming a tax exceeds constitutional limits states a valid claim for an illegal exaction. The Kimbroughs' reliance on *Barker* is misplaced.

Article 7, section 28 of the Arkansas Constitution states in pertinent part that "[t]he County Courts shall have exclusive original jurisdiction in all matters relating to county taxes." In reversing the circuit court's dismissal of the case for lack of subject-matter jurisdiction, the *Barker* court was careful to note that the appeal concerned a school tax, not a county tax, and consequently, the county court did not have exclusive jurisdiction.

The case before us deals with tax matters that are associated with a county tax. Accordingly, the plain wording of the Arkansas Constitution requires that the Kimbroughs' complaint be handled by the Benton County Court.

The Kimbroughs' reliance on *Robinson*, 2009 Ark. 632, 362 S.W.3d 870, is similarly misplaced. They assert that in reversing the circuit court's dismissal of the case for want of subject-matter jurisdiction, the *Robinson* court held that the taxpayers properly "stated a claim for illegal exaction" when they alleged the city and the county did not correctly follow the statutory levy procedures to authorize a library-tax increase. However, we note that *Robinson* is both factually and legally distinguishable from the case before us. In *Robinson,* after voters in Little Rock approved an increased millage to support the library, the county judge erred in applying Arkansas Code Annotated section 14-14-904, which deals with quorum court procedures. The Pulaski County judge sought to "correct" what he thought

6

was the proper millage to "levy." However, the *Robinson* court held that because the quorum court did not meet after the Little Rock voters approved the millage in a special election as required by section 14-14-904, the millage increase was not properly levied. In effect, the *Robinson* court held that the tax itself was illegal. The Kimbroughs do not contend that county ad valorem taxes are themselves illegal. Furthermore, in *Robinson*, the actions of the county judge and lack of action by the county court were at the center of the controversy. Justice would not be served by requiring the county judge to pass judgment on himself.

### B. Whether the Circuit Courts Have Subject-Matter Jurisdiction to Resolve this Case

The Kimbroughs cite Amendment 80, section 6, of the Arkansas Constitution, which states that the circuit court has "original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution." Further, quoting *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 109, 901 S.W.2d 809, 811 (1995), the Kimbroughs assert that this means that "unless a cause of action is confided by the constitution exclusively to another court, it belongs exclusively, or concurrently, in the circuit court." Arguing further, they contend that because article 16, section 13 does not specify the court in which an illegal-exaction claim may be asserted, this court has "often held that [the] circuit court has subject-matter jurisdiction of an illegal exaction suit." *Id.* at 108, 901 S.W. 2d at 811 (citing *Jones v. Clark*, 278 Ark. 119, 644 S.W.2d 257 (1983)); *see also Robinson*, 2009 Ark. 632, at 5, 362 S.W.3d at 874 ("[S]ubject matter jurisdiction [lies] in circuit court" for illegal-exaction claim.); *Hoyle v. Faucher*, 334 Ark. 529, 533, 975 S.W.2d 843, 845 (1998) (Circuit court has

original subject matter jurisdiction to resolve "[a] suit to prevent the collection of an illegal or unauthorized tax." (citation omitted)). Additionally, citing Arkansas Code Annotated section 26-35-902(a) as evidence, the Kimbroughs contend that the Legislature has likewise recognized the subject-matter jurisdiction of circuit courts to hear illegal-exaction suits because they are ultimately the courts that will "order[] any county, city, or town to refund or return to taxpayers moneys illegally exacted by the county, city, or town . . . ." The Kimbroughs concede that the county court has jurisdiction "in all matters relating to county taxes," Ark. Const. art. 7, § 28, but assert that constitutional questions about the validity of those taxes and the county's authority to collect them "must" be brought in circuit court. We are not persuaded by this argument.[1]

We take no issue with the proposition that circuit courts are courts of general jurisdiction and that illegal-exaction suits can be maintained in circuit court. However, it does not follow that this case "must" originate in circuit court. First, Kimbroughs' contention—that this court in *Foster*, *supra*, held that a circuit court has "concurrent"

---

[1]The dissenting justice is apparently swayed by the Kimbroughs' assertion that they are pursuing a cause of action for an illegal exaction. However, our rules require fact pleading, and a complaint must state facts, nor mere conclusions, in order to entitle the pleader to relief. *Ark. Tech University v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000). The factual allegations in the Kimbroughs' pleadings establish that their cause of action must be pursued in county court. Their factual allegations are that despite clear guidance from the Attorney General and the Assessment Coordination Division of the Arkansas Department of Finance and Administration regarding amendment 79 and Act 49, the Benton County Assessor failed to properly apply amendment 79 and freeze the assessment on their home, a year after it was purchased. Taken as true, this is precisely the flaw in the assessment process that must be addressed in county court and through the administrative remedies. As pled, the factual basis for the Kimbroughs' complaint does not require constitutional interpretation but merely the correct application of the law, which is the primary reason for the existence of the executive branch. *See* Ark. Const. art. 6, § 9.

jurisdiction with the county court—is incorrect. The issue in *Foster* was whether an illegal-exaction suit had to be filed in circuit court or chancery court. The *Foster* court held that those were the courts with concurrent jurisdiction. Because Amendment 80 combined the circuit and chancery courts, that point of law is no longer of any concern.

The Kimbroughs themselves acknowledge that the Arkansas Constitution expressly confers "exclusive original jurisdiction in all matters relating to county taxes." Ark. Const. art. 7, § 28. Characterizing their lawsuit as something other than a matter relating to county taxes is a familiar line of reasoning that routinely fails in this court. *Hambay v. Williams*, 373 Ark. 532, 285 S.W.3d 239 (2008) (holding that if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie and that a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal); *Villines v. Pulaski Cnty. Bd. of Educ.*, 341 Ark. 125, 14 S.W.3d 510 (2000) (holding that a lawsuit that involved the proper distribution of collected penalties from ad valorem county taxes and did not involve the illegal exaction of school taxes, was a "matter relating to county taxes" over which the county court had exclusive subject-matter jurisdiction); *Pockrus v. Bella Vista Village Prop. Owners Ass'n*, 316 Ark. 468, 872 S.W.2d 416 (1994) (holding this court has strictly adhered to the rule that, if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie); *McIntosh v. Sw, Truck Sales*, 304 Ark. 224, 226, 800 S.W.2d 431, 432–33 (1990) (reversing and dismissing for lack of subject-matter jurisdiction a chancery court's enjoining the collection of taxes where the county assessed a building separately from the land upon which it stood, because the taxes involved were neither illegal nor unauthorized); *see also Curry v. Dawson*,

9

238 Ark. 310, 379 S.W.2d 287 (1964) (granting writ of prohibition where an election contest was brought under the guise of being an illegal-exaction suit).[2]

The case before us only represents a "flaw in the assessment." *See Hambay*, *supra*. Accordingly, the county court has exclusive jurisdiction. Ark. Const. art. 7, § 28.

### C. Whether the Kimbroughs' Claim Requires Exhaustion of Remedies

The Kimbroughs attempt to challenge the circuit court's finding that it lacked subject-matter jurisdiction because they did not exhaust the administrative remedies required by statute before a case involving a county assessment may be brought to circuit court.[3]   Citing *McGhee*, 360 Ark. 363, 201 S.W.3d 375, the Kimbroughs argue that

---

[2]We must decline his invitation to disregard *stare decisis*. The Supreme Court has described adherence to precedent as "a foundation stone of the rule of law." *Kisor v. Wilkie*, 588 U.S. ___, 139 S. Ct. 2400 (2019) (quoting *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 798 (2014)). "[I]t promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Id.* (quoting *Payne v. Tennessee*, 501 U.S. 808 (1991)). While acknowledging that *stare decisis* is "not an inexorable command," the *Kisor* Court nonetheless stated that any departure from the doctrine demands "special justification"—something more than "an argument that the precedent was wrongly decided." *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014).

[3]The Kimbroughs' pleadings do not support this claim. In their third amended complaint, the Kimbroughs averred that "because this action is brought to enforce constitutional rights and not challenging an assessor's methodology or valuation, the Plaintiffs are not required to exhaust administrative remedies. *DeSoto v. Hill*, 541 S.W.3d 415 (2018); *Merwin v. Fussell*, 93 Ark. 336, 124 S.W. 1021 (1910)." However, the cases that the Kimbroughs relied on do not support this broad assertion. *Fussell* is an illegal-tax case, as are all the cases cited by the *Fussell* court as its legal underpinning. *Vaughan v. Bowie*, 30 Ark. 278 (1875); *Brodie v. McCabe*, 33 Ark. 690 (1878); *Cole, Collector, v. Blackwell*, 38 Ark. 271 (1881); *St. Louis Southwestern R. Co. v. Kavanaugh*, 78 Ark. 468, 96 S.W. 409 (1906); *Little Rock v. Barton*, 33 Ark. 441 (1878); *Dreyfus v. Boone*, 88 Ark. 353, 114 S.W. 718 (1908). Similarly unavailing is *DeSoto v. Hill*, *supra*. DeSoto properly pursued the so-called administrative remedies before appealing the decision of the Faulkner County Court to circuit court.

10

exhaustion of remedies is not required. This argument is unpersuasive. *McGhee* is not a county tax case but rather a public funds case that challenges the licensure of check–cashing entities that allegedly charged fees in violation of Arkansas's usury laws. Furthermore, while we are mindful of the differences in the factual situations between the case relied on by the circuit court, *May v. Akers-Lang*, 2012 Ark. 7, 386 S.W.3d 378, and the case at bar, *Akers-Lang* accurately describes the "administrative remedies" that must be exhausted before a flawed assessment may be docketed in circuit court as an appeal from the county court:

> The proper appeal process for allegations of improper ad valorem tax assessments is set forth in Ark. Code Ann. §§ 26-27–317 to –318 (Repl. 1997 & Supp. 2011). An aggrieved property owner's first step is to contest the ad valorem property tax assessment to the county equalization board. *See* Ark. Code Ann. § 26-27–317. The board's decision, once rendered, can be appealed to the county court. *See* Ark. Code Ann. § 26-27–318. *See, e.g.*, *Crittenden Hosp. Ass'n v. Bd. of Equalization of Crittenden County*, 330 Ark. 767, 958 S.W.2d 512 (1997). This court has upheld this process in the past when it was ignored. *See, e.g.*, *Jones v. Crouch*, 231 Ark. 720, 332 S.W.2d 238 (1960).

2012 Ark. 7, at 12, 386 S.W.3d at 384. We hold that the circuit court soundly relied on *Akers-Lang* as authority for dismissing the Kimbroughs' complaint.

### D. Allegations that the Circuit Court Order Creates Serious Practical and Policy Concerns

For their final argument, the Kimbroughs assert that "an entire class of elderly and disabled individuals has been harmed while the [counties] continue to increase the assessed values of their homesteads above the constitutionally required freeze." They contend that the statutory scheme for challenging the faulty assessment would be difficult and time-consuming and would likely lead to inconsistent results. However, as this court stated in

11

*Kerr v. East Central Arkansas Regional Housing Authority*, 208 Ark. 625, 630, 187 S.W.2d 189, 192 (1945): "Public policy is declared by the General Assembly; not by courts."

Having affirmed the circuit court on direct appeal, we need not consider the counties' contingent cross-appeal. We therefore dismiss it as moot.

Affirmed on direct appeal; cross-appeal dismissed as moot.

BAKER and HUDSON, JJ., concur in part and dissent in part.

WOMACK, J., dissents.


**KAREN R. BAKER, Justice, concurring in part and dissenting in part.** Because the Kimbroughs raised a valid illegal-exaction claim, I dissent. Justice Womack's dissenting opinion addresses many of the patent flaws in the majority opinion. However, I do not think it is necessary to overturn this court's precedent in reaching the conclusion that the Kimbroughs' illegal-exaction claim was sufficiently pled. I write separately because, in my view, *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997), is instructive on this issue.

We have explained that "if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie" and that "a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal." *May v. Akers-Lang*, 2012 Ark. 7, at 9–10, 386 S.W.3d 378, 383. The majority concludes that "[t]he case before us only represents a 'flaw in the assessment.'" I disagree.

In *Barker*, taxpayers initiated a suit against the Board of Fountain Lake School District # 18 and the County Clerk and County Collector of Saline County, alleging that the collection of a school-district tax constituted an illegal exaction because of the school

12

district's failure to roll back taxes following a countywide reappraisal as required under amendment 59. 327 Ark. at 592, 939 S.W.2d at 838. Amendment 59 provided that whenever a countywide reassessment of property subject to ad valorem taxes resulted in an increase of the aggregate value of taxable real and personal property of 10 percent or more over the previous year, each taxing unit was required to roll back taxes. *See* Ark. Const. art. 16, § 14(a).[1] Thus, the taxpayers argued that because the school district was set to receive revenues exceeding those received the previous year by more than 10 percent, in violation of amendment 59, the tax was illegal without the rollback. *Barker*, 327 Ark. at 592, 939 S.W.2d at 838. On appeal, we reversed the circuit court's dismissal of the suit and recognized that a valid claim for an illegal exaction had been raised because "the taxpayers [did] not contest the reappraisal and reassessment by the county. They contest[ed] the failure of the school district to roll back taxes, which, they contend[ed], violates Amendment 59. Unlike [*Pockrus v. Bella Vista Property Owners Ass'n*, 316 Ark. 468, 872 S.W.2d 416 (1994)], where the issue was the constitutionality of a five-year reassessment *plan*, here the issue is the *tax* itself, which allegedly exceeds constitutional limits[.]" *Id.* at 599–600, 939 S.W.2d at 842 (emphasis in original). Thus, *Barker* stands for the general proposition that an illegal-exaction suit may be instituted when a taxpayer alleges that a tax exceeds constitutional limits, because it is a challenge to the tax itself.[2]

---

[1]Most of Amendment 59 is now incorporated into article 16, section 14 of the Arkansas Constitution. *See Hoyle v. Faucher*, 334 Ark. 529, 532, 975 S.W.2d 843, 844 (1998).

[2]The majority correctly notes that the Kimbroughs rely on *Barker*, *supra*, in support of the proposition that a suit claiming that a tax exceeds constitutional limits states a valid claim for an illegal exaction. However, it inexplicably concludes that this reliance is misplaced because "the *Barker* court was careful to note that the appeal concerned a school tax, not a county tax, and consequently, the county court did not have exclusive jurisdiction.

13

Here, the Kimbroughs initiated the underlying suit to challenge the counties' failure to freeze the assessed value of the Kimbroughs' homestead as required by amendment 79 of the Arkansas Constitution. Amendment 79, section 1 mandates that "[a] homestead used as the taxpayer's principal place of residence purchased or constructed on or after January 1, 2001 by a disabled person or by a person sixty-five (65) years of age or older shall be assessed thereafter based on the lower of the assessed value as of the date of purchase or construction or a later assessed value." Like the taxpayers in *Barker*, the Kimbroughs do not challenge the timing or methods used to assess their property. Similarly, the Kimbroughs' third amended complaint makes clear that they are "not challenging the valuation of any appraisal[.]" Instead, they are alleging that *any* increase *at all* in the assessed value of their homestead in violation of amendment 79 is unconstitutional and that the real-property taxes they paid as a result of those unconstitutional increases were therefore illegal. Consistent with our holding in *Barker*, the Kimbroughs have made a valid claim for an illegal exaction because they allege that the taxes at issue exceeded constitutional limits. Accordingly, I dissent from the result reached by the majority and would reverse and remand on direct appeal.

As to the counties' cross-appeal, I agree with the majority that it should be dismissed. However, based on the discussion above, I cannot agree with the majority's rationale that the cross-appeal is moot. Instead, I would dismiss on the grounds that the issues raised on cross-appeal are not properly before us as a result of the circuit court's order dismissing the

The case before us deals with tax matters that are associated with a county tax." This is a distinction without a difference, given that the variety of tax being challenged has no bearing on whether a valid illegal-exaction claim has been sufficiently pled under article 16, section 13 of the Arkansas Constitution.

Kimbroughs' third amended complaint outright for a lack of subject–matter jurisdiction. Therefore, I concur on cross-appeal.

HUDSON, J., joins.

**SHAWN A. WOMACK, Justice, dissenting.** The correct disposition of this direct appeal is to reverse and remand to the circuit court because the Kimbroughs were entitled to institute their illegal exaction suit there. Article 16, section 13 provides, "any citizen of any county, city or town may *institute suit*, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of *any illegal exactions whatever.*"[1] The majority opinion cannot be reconciled with the plain and unambiguous text contained in article 16, section 13 of our Constitution. Reversal and remand are warranted for the reasons below.

Subject–Matter Jurisdiction

In this case, the Kimbroughs pled an illegal exaction claim; thus, the circuit court had subject-matter jurisdiction. Finding to the contrary, the majority hangs its hat on article 7, section 28 of the Constitution and stare decisis. The majority opinion is misguided. Generally, a circuit court does not have original jurisdiction over claims that only challenge assessment procedures or plans employed by county assessors.[2] The reason being that such

---

[1]Ark. Const. art. 16, § 13 (emphasis added).

[2]*See, e.g.*, *Pockrus v. Bella Vista Vill. Prop. Owners Ass'n*, 316 Ark. 468, 472, 872 S.W.2d 416, 418 (1994) ("Bella Vista Village effectually questions only the reassessment procedure or plan employed by the county assessor and collector as being a flawed one. Because this case does not involve a void *or illegal tax assessment*, the chancery court was without power to hear this matter." (Emphasis added.)); *see also* Ark. Const. art. 7, § 28; Ark. Code Ann. §§ 26-27-317 and 26-27-318 (Repl. 2020).

claims do not amount to an illegal exaction and thus belong in county court pursuant to article 7, section 28 of the Constitution and Ark. Code Ann. §§ 26-27-317 and 26-27-318. The plain language of article 7, section 28, expressly provides a county court's jurisdiction is limited to *local concerns*.[3]  However, this is distinguishable from an illegal-exaction claim brought pursuant to article 16, section 13 of our Constitution.  In the latter instance, subject-matter jurisdiction properly lies in the circuit court.[4]  This interpretation of the relevant constitutional provisions is the only way to make them a harmonious whole.[5]

Furthermore, our Constitution does not require a citizen alleging an illegal exaction to petition a county board of equalization, then appeal to a county court, before finally appealing to the circuit court.  Nevertheless, the majority opinion interprets the "institute suit" language in article 16, section 13 to mean initiate a three-step appeals process.  This is nonsensical.  Likewise, article 16, section 13 does not just provide taxpayers the constitutional right to individually challenge an illegal tax; it provides "any citizen of any

---

[3]The County Courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the *internal improvement and local concerns* of the respective counties." Ark. Const. art. 7, § 28 (emphasis added).  *See also* Ark. Const. amend. 55, § 1 – County Powers.

[4]*Foster v. Jefferson Cnty. Quorum Ct.*, 321 Ark. 105, 108, 901 S.W.2d 809, 810 (1995) (citing *Jones v. Clark*, 278 Ark. 119, 644 S.W.2d 257 (1983)); *see also Robinson v. Villines*, 2009 Ark. 632, at 5, 362 S.W.3d 870, 874 ("[S]ubject matter jurisdiction [lies] in circuit court" for illegal exaction claim.); *Hoyle v. Faucher*, 334 Ark. 529, 533, 975 S.W.2d 843, 845 (1998) (Circuit court has original subject matter jurisdiction to resolve "[a] suit to prevent the collection of an illegal or unauthorized tax." (Citation omitted.)).

[5]"It is the duty of this court to harmonize all provisions of the Constitution and amendments thereto and to construe them with the view of a harmonious whole." *Ark. Dep't of Fin. & Admin. v. 2600 Holdings, LLC*, 2022 Ark. 140, at 4, 646 S.W.3d 99, 102. The majority's opinion does not harmonize any of the relevant provisions of our Constitution but instead creates several conflicts.

county" the constitutional right to "institute suit" on behalf of "all others interested." Here, that includes individuals from all seventy-five counties in Arkansas. Under the majority's view, Ark. Code Ann. § 26-27-318 forecloses this right. Ark. Code Ann. § 26-27-318(e) only allows "property owners in the county" to "appear and be heard in support of or in opposition to the appeal." Thus, according to the majority, Ark. Code Ann. § 26-27-318(e) controls over the language in article 16, section 13 of our Constitution. This is not proper, and the majority's viperine interpretation destroys the plain and unambiguous language in article 16, section 13.[6]

It is also worth noting that the majority position necessarily tasks the county board of equalization and the county court with performing a job that it is neither qualified nor authorized to perform, which is to answer constitutional questions. State courts—not county courts—interpret the state Constitution.[7] Requiring the county board of equalization and the county court to rule on matters of constitutional interpretation violates the separation of powers. The powers of the government of the State of Arkansas are divided into three distinct departments—legislative, executive, and judicial. Ark. Const. art. 4, § 1. "The judicial power is vested in the Judicial Department of state government, consisting of a Supreme Court and other courts established by this Constitution." Ark. Const. amend. 80, § 1. State courts consist of district courts, circuit courts, courts of appeal,

---

[6]A viperine interpretation is one that essentially destroys the text. Thomas Hobbs summarized the phenomenon best when he said, "By the craft of the interpreter, the law may be made to bear a sense, contrary to that of the Sovereign; by which the interpreter becomes the Legislator." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 431 (2012).

[7]*Lake View Sch. Dist. No. 25 v. Huckabee*, 358 Ark. 137, 162, 189 S.W.3d 1, 17 (2004) (Hannah, J., concurring) ("State courts . . . interpret[ing] the State Constitutions").

and the Supreme Court. Ark. Const. amend. 80, §§ 2, 5, 6, and 7. The county board of equalization and the county court do not have the authority to function as if they were members of the state judicial branch and answer legal questions related to the state Constitution.[8] Indeed, no county can "exercise any authority not relating to county affairs." Ark. Const. amend. 55, § 1(b) - County Powers. Instead, counties are limited to exercising "local legislative authority." *Id.* § 1(a).

The statutes detailing the administrative appeals process, Ark. Code Ann. §§ 26-27-317 and 26-27-318, also support this conclusion. The county board of equalization can only "make a determination based on evidence presented by the parties to either accept the valuation of the subject property set by the county assessor or raise or lower the valuation of the subject property." Ark. Code Ann. § 26-27-317(d)(i)(E). Likewise, the county court's role is limited to whether a taxpayer's "valuation of the property is correct." Ark. Code Ann. § 26-27-318. Neither can usurp the powers granted to state courts and answer the question posed by the Kimbroughs here—whether Amendment 49 of 2017 is unconstitutional.[9] Only our state courts can answer that question. Accordingly, the majority's holding today is at odds with our separation-of-powers principles.

The Kimbroughs Pled a Claim for Illegal Exaction

---

[8]"No person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others." Ark. Const. art. 4, § 2.

[9]Although county courts were initially contemplated in article 7 of the Constitution––the judicial article—they are not mentioned in amendment 80. In any event, it is clear that county courts and judges have a very limited role that pertains only to county matters, not state matters. *See* Ark. Const. art. 7, § 28; Ark. Const. amend. 55, § 1.

The Kimbroughs sufficiently pled their claim for an illegal exaction at this stage of the proceedings. "A government-imposed exaction, regardless of its name, is illegal if it violates our Constitution, a statute, or other law."[10]  Here, the Kimbroughs claim the assessment at issue is an illegal government-imposed exaction because it violates amendment 79 of the Arkansas Constitution.[11]  To limit the amount that counties could increase assessed values of certain types of real property after a countywide appraisal, the citizens of Arkansas adopted amendment 79.  Amendment 79 provides that, generally, a homestead property's assessed value cannot increase more than 5 percent.  However, it provides that if a homestead property is purchased by a disabled person or by a person who is sixty-five or older, the assessed value cannot be increased at all.  Thus, the assessed value is frozen at the date of the purchase.  Or, alternatively, it could be decreased if a later assessed value was lower.[12]  Amendment 79 defines assessed value as "the taxable and adjusted rate after applying the caps and freezes contained herein."

---

[10]*City of Fort Smith v. Merriott*, 2023 Ark. 51, at 7, 660 S.W.3d 809, 814 (Womack, J., concurring); *see also Prince v. Ark. State Highway Comm'n*, 2019 Ark. 199, at 5, 576 S.W.3d 1, 4 ("[A]n illegal exaction is . . . [an] exaction that is either not authorized by law or is contrary to law."); *Robinson v. Villines*, 2009 Ark. 632, at 6, 362 S.W.3d at 874 ("We have held that the definition of an illegal exaction is any exaction that is not authorized by or is contrary to law.").

[11]Historically, illegal-exaction claims have fallen under one of two different case types.  To be clear, however, article 16, section 13 does not limit illegal exactions to these two categories of cases. The first is a "public funds" case, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. *McIntosh v. Sw. Truck Sales*, 304 Ark. 224, 226, 800 S.W.2d 431, 433 (1990); *Scott Cnty. v. Frost*, 305 Ark. 358, 359, 807 S.W.2d 469, 470 (1991).  The second type of illegal-exaction case, like the one here, involves illegal or unauthorized "taxes and assessments." *Id*.  The Kimbroughs' claim falls squarely into this second category of cases.

[12]Ark. Const. amend. 79, § 1(a).

In 2017, the Arkansas Legislature enacted Act 49. The Act changed the definition of assessed value "as used in this subchapter and in the Arkansas Constitution, Amendment 79," to "20% of the appraised value of real property." Thus, the Act stripped amendment 79 of its constitutional caps and freezes. The Kimbroughs claim all seventy-five Arkansas counties have been assessing the value of homesteads in accordance with Act 49, which they claim is unconstitutional because it violates amendment 79. Because the Kimbroughs claim that the assessment at issue is illegal (violates the Constitution), rather than that the assessment procedure or scheme is flawed, they have plainly stated a claim that an illegal exaction has occurred.

Stare Decisis

Rather than reconcile the obvious flaw in this court's jurisprudence here with the plain and unambiguous text contained in article 16, section 13, the majority invokes stare decisis. "The true irony of our modern stare decisis doctrine lies in the fact that proponents of stare decisis tend to invoke it most fervently when the precedent at issue is least defensible."[13] That is certainly the case here.

The majority mistakenly claims that article 16, section 13 requires taxpayers to challenge the legality of a tax to allege an illegal exaction occurred. This is not true. The text is clear, citizens may "institute suit . . . against the enforcement of *any illegal exactions whatever*."[14] This court (including the majority here) has mistakenly held time and again that challenging the legality of ad valorem taxes themselves is a requirement of an illegal-exaction claim, but

---

[13]*Gamble v. United States*, 587 U.S. 678, 724–25 (2019) (Thomas, J., concurring).
[14](Emphasis added.)

this rule is found nowhere in our Constitution. Rather it is a legal fiction, fabricated by this court out of whole cloth. In so doing, this court erroneously limited the scope of article 16, section 13.[15]

This court "should not invoke stare decisis to uphold precedents that are demonstrably erroneous."[16] This is because "stare decisis is only an 'adjunct' of our duty as judges to decide by our best lights what the Constitution means."[17] Here, the majority's reliance on "stare decisis . . . does not comport with our judicial duty . . . because it elevates demonstrably erroneous decisions—meaning decisions outside the realm of permissible interpretation—over the text of the Constitution[.]"[18] Accordingly, any case in which this court has mistakenly held that a taxpayer must challenge the legality of a tax itself to amount to an illegal-exaction claim, rather than claiming an assessment is illegal, should be overturned.

For these reasons, I respectfully dissent.

*RMP, LLP*, by: *Timothy C. Hutchinson* and *Lisa M. Geary*, for appellants/cross-appellees.

---

[15] *See, e.g.*, *Hambay v. Williams*, 373 Ark. 532, 535–36, 285 S.W.3d 239, 242 (2008) ("The taxes that are the subject of this action are ad valorem taxes. Ad valorem taxes are legal in this state . . . . 'If the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie.' . . . Accordingly, *Pockrus* controls and we affirm the trial court's dismissal of the action for lack of subject-matter jurisdiction." (quoting *Pockrus v. Bella Vista Prop. Owners Ass'n*, 316 Ark. 468, 472, 872 S.W.2d 416, 418 (1994))).

Ironically, *Pockrus* did not eliminate a taxpayer's ability to challenge the assessment of a tax as an illegal exaction if the underlying tax was legal. *Pockrus* 316 Ark. 468, 872 S.W.2d 416. To the contrary, the court in *Pockrus* stated, "Because this case does not involve a *void or illegal tax assessment*, the court was without power to hear this matter." *Id.* at 472, 872 S.W.2d at 418 (emphasis added).

[16] *Gamble*, 587 U.S. at 726 (Thomas, J., concurring).

[17] *McDonald v. City of Chicago*, 561 U.S. 742, 812 (2010) (Thomas, J., concurring in part).

[18] *Gamble*, 587 U.S. at 711 (Thomas, J., concurring).

*Colin R. Jorgensen*, Litigation Counsel, Association of Arkansas Counties, for appellees/cross appellants.